(Slip Opinion) OCTOBER TERM, 2012 1

NOTE: Where it is feasible, a syllabus (headnote) will be released, as is being done in connection with this case, at the time the opinion is issued. The syllabus constitutes no part of the opinion of the Court but has been prepared by the Reporter of Decisions for the convenience of the reader. See *United States* v. *Detroit Timber & Lumber Co.,* 200 U. S. 321, 337.

# SUPREME COURT OF THE UNITED STATES

Syllabus

## RYAN, DIRECTOR, ARIZONA DEPARTMENT OF CORRECTIONS *v*. VALENCIA GONZALES

CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

No. 10–930.   Argued October 9, 2012—Decided January 8, 2013*

Respondent Valencia Gonzales, a death row inmate in Arizona, sought federal habeas relief.  His counsel moved to stay the proceedings, contending that Gonzales' mental incompetence prevented him from rationally communicating with or assisting counsel, and that Gonzales was thus entitled to a stay because, under the Ninth Circuit's *Rohan* decision, what is now 18 U. S. C. §3599(a)(2) requires a stay when a petitioner is adjudged incompetent.  The District Court denied a stay, finding that the claims before it were record based or resolvable as a matter of law and thus would not benefit from Gonzales' input.  Gonzales thereafter sought a writ of mandamus in the Ninth Circuit.  Applying *Rohan* and its recent decision in *Nash*—which gave habeas petitioners a right to competence even on record-based appeals—the court granted the writ, concluding that §3599 gave Gonzales the right to a stay pending a competency determination.

Respondent Sean Carter, a death row inmate in Ohio, initiated federal habeas proceedings but eventually moved for a competency determination and stay of the proceedings.  The District Court granted the motion and found Carter incompetent to assist counsel.  Applying the Ninth Circuit's *Rohan* test, it determined that Carter's assistance was required to develop four of his exhausted claims.  It thus dismissed his habeas petition without prejudice and prospectively tolled the statute of limitations.  On appeal, the Sixth Circuit, relying in part on *Rees* v. *Peyton*, 384 U. S. 312 (*Rees I*), located a statutory right to competence in 18 U. S. C. §4241, and found that a court could

————————
*Together with No. 11–218, *Tibbals, Warden* v. *Carter,* on certiorari to the United States Court of Appeals for the Sixth Circuit.

employ that provision whenever a capital habeas petitioner seeks to forgo his petition. It thus ordered that Carter's petition be stayed indefinitely with respect to any claims requiring his assistance.

*Held*:

1. Section 3599 does not provide a state prisoner a right to suspension of his federal habeas proceedings when he is adjudged incompetent. Pp. 5–12.

(a) The assertion of such a right lacks any basis in the provision's text. Section 3599 guarantees federal habeas petitioners on death row the right to federally funded counsel, §3599(a)(2), and sets out various requirements that appointed counsel must meet, §§3599(b)–(e), but it does not direct district courts to stay proceedings when petitioners are found incompetent. The assertion is also difficult to square with the Court's constitutional precedents. If the Sixth Amendment right carried with it an implied right to competence, the right to competence at trial would flow from that Amendment, not from the right to due process, see *Cooper* v. *Oklahoma*, 517 U. S. 348, 354. But while the benefits flowing from the right to counsel *at trial* could be affected if an incompetent defendant is unable to communicate with his attorney, this Court has never said that the right to competence *derives from* the right to counsel. And the Court will not assume or infer that Congress intended to depart from such precedent and locate a right to competence in federal habeas proceedings within the right to counsel. See *Merck & Co.* v. *Reynolds*, 559 U. S. ___, ___. Pp. 5–7.

(b) The Ninth Circuit identified its rule in *Rohan*, concluding there that a petitioner's mental incompetency could "eviscerate the statutory right to counsel" in federal habeas proceedings. But given the backward-looking, record-based nature of §2254 proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence. *Rees I, supra, Rees* v. *Peyton,* 386 U. S. 989, and *Rees* v. *Superintendent of the Va. State Penitentiary*, 516 U. S 802, which involved an incompetent death row inmate's attempt to withdraw his certiorari petition, offer no support for federal habeas petitioners seeking to stay district court proceedings or for the Ninth Circuit's opinions in *Rohan, Nash,* or this case. The Ninth Circuit's interpretation is also not supported by *McFarland* v. *Scott*, 512 U. S. 849, 858, in which this Court held that a district court could stay an execution after a capital prisoner had invoked his right to counsel but before he had filed his habeas petition. In contrast, Gonzales is seeking to stay the District Court's proceedings, and he sought a stay more than six years after initiating his habeas petition, certainly ample time for his attorney to research and present the claims. Pp. 7–12.

Syllabus

2. Section 4241 also does not provide a statutory right to competence during federal habeas proceedings. The Sixth Circuit based its conclusion largely on a misreading of *Rees I*, which did not recognize such a right. Moreover, §4241 does not even apply to habeas proceedings. By its terms, it applies only to trial proceedings prior to sentencing and "at any time after the commencement of probation or supervised release." Federal habeas proceedings, however, commence after sentencing, and federal habeas petitioners are incarcerated, not on probation. Furthermore, §4241, like the rest of Title 18 generally, applies exclusively to federal defendants, not to state prisoners like Carter. Finally, §4241(a) authorizes a district court to grant a motion for a competency determination if there is reasonable cause to believe that the defendant's mental incompetence renders him "unable to understand . . . the proceedings against him or to assist properly in his defense," while a §2254 habeas proceeding is a civil action *against* a state-prison warden, in which the petitioner collaterally attacks his conviction in an earlier state trial. Pp. 12–14.

3. For purposes of resolving these cases, it is sufficient to address the outer limits of the district court's discretion to issue stays; it is unnecessary to determine the precise contours of that discretion. In Gonzales' case, the District Court did not abuse its discretion in denying a stay after finding that Gonzales' claims were all record based or resolvable as a matter of law, regardless of his competence. Review of a petitioner's record-based claims subject to §2254(d) is limited to the record before the state court that heard the case on the merits. Any evidence that Gonzales might have would be inadmissible. In Carter's case, three of his claims do not warrant a stay because they were adjudicated on the merits in state postconviction proceedings and thus subject to review under §2254(d). Thus, extrarecord evidence that he might have concerning these claims would be inadmissible. It is unclear from the record whether he exhausted his fourth claim. If it was exhausted, it too would be record based. But even if it was both unexhausted and not procedurally defaulted, an indefinite stay would be inappropriate, since such a stay would permit petitioners to "frustrate [the Antiterrorism and Effective Death Penalty Act of 1996's] goal of finality by dragging out indefinitely their federal habeas review." *Rhines* v. *Weber*, 544 U. S. 269, 277–278. Pp. 14–18.

623 F. 3d 1242, No. 10–930, reversed; 644 F. 3d 329, No. 11–218, reversed and remanded.

THOMAS, J., delivered the opinion for a unanimous Court.

NOTICE: This opinion is subject to formal revision before publication in the preliminary print of the United States Reports. Readers are requested to notify the Reporter of Decisions, Supreme Court of the United States, Washington, D. C. 20543, of any typographical or other formal errors, in order that corrections may be made before the preliminary print goes to press.

# SUPREME COURT OF THE UNITED STATES

Nos. 10–930 and 11–218

CHARLES L. RYAN, PETITIONER

10–930        *v.*

ERNEST VALENCIA GONZALES

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

TERRY TIBBALS, PETITIONER

11–218        *v.*

SEAN CARTER

ON WRIT OF CERTIORARI TO THE UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

[January 8, 2013]

JUSTICE THOMAS delivered the opinion of the Court.

These two cases present the question whether the incompetence of a state prisoner requires suspension of the prisoner's federal habeas corpus proceedings. We hold that neither 18 U. S. C. §3599 nor 18 U. S. C. §4241 provides such a right and that the Courts of Appeals for the Ninth and Sixth Circuits both erred in holding that district courts must stay federal habeas proceedings when petitioners are adjudged incompetent.

I

A

Ernest Valencia Gonzales was convicted by an Arizona jury of felony murder, armed robbery, aggravated assault, first-degree burglary, and theft. The convictions arose

from Gonzales' repeated stabbing of Darrel and Deborah Wagner in front of their 7-year-old son during a burglary of the Wagners' home. Darrel Wagner died from the stabbing, while Deborah Wagner survived but spent five days in intensive care. The trial court sentenced Gonzales to death on the murder charge and to various prison terms for the other crimes.

After exhausting state remedies, Gonzales filed a petition for a writ of habeas corpus in Federal District Court on November 15, 1999. While the petition was pending, Gonzales' appointed counsel moved to stay the proceedings, contending that Gonzales was no longer capable of rationally communicating with or assisting counsel. He argued that mental incompetence entitled Gonzales to a stay under Ninth Circuit precedent. See *Rohan* v. *Woodford*, 334 F. 3d 803 (2003). In *Rohan*, the Ninth Circuit held that the federal statute guaranteeing state capital prisoners a right to counsel in federal habeas proceedings, 21 U. S. C. §848(q)(4)(B) (2000 ed.) (now codified as 18 U. S. C. §3599(a)(2)), could not "be faithfully enforced unless courts ensure that a petitioner is competent," 334 F. 3d, at 813. *Rohan* thus concluded that "where an incompetent capital habeas petitioner raises claims that could potentially benefit from his ability to communicate rationally, refusing to stay proceedings pending restoration of competence denies him his statutory right to assistance of counsel, whether or not counsel can identify with precision the information sought." *Id.,* at 819.

Applying *Rohan*, the District Court denied a stay after concluding that the claims properly before it were record based or resolvable as a matter of law and thus would not benefit from Gonzales' input. The court found it unnecessary to determine whether Gonzales was incompetent, though it did find that he possessed "at least a limited capacity for rational communication." *Gonzales* v. *Schriro*, 617 F. Supp. 2d 849, 863 (Ariz. 2008).

Gonzales thereafter filed an emergency petition for a writ of mandamus in the Ninth Circuit. While Gonzales' petition was pending, the Ninth Circuit decided *Nash* v. *Ryan*, 581 F. 3d 1048 (2009), which held that habeas petitioners have a right to competence on appeal, even though appeals are entirely record based. *Id.*, at 1050 ("While an appeal is record-based, that does not mean that a habeas petitioner in a capital case is relegated to a nonexistent role. Meaningful assistance of appellate counsel may require rational communication between counsel and a habeas petitioner"). Applying *Nash* and *Rohan*, the court granted the writ of mandamus, concluding that even though Gonzales' "exhausted claims are record-based or legal in nature, he is entitled to a stay pending a competency determination" under 18 U. S. C. §3599. *In re Gonzales*, 623 F. 3d 1242, 1244 (2010).

We granted certiorari to determine whether §3599 provides a statutory right to competence in federal habeas proceedings. 565 U. S. \_\_\_ (2012).

B

Sean Carter was convicted by an Ohio jury of aggravated murder, aggravated robbery, and rape, and sentenced to death for anally raping his adoptive grandmother, Veader Prince, and stabbing her to death. After exhausting his state-court appeals, Carter initiated federal habeas proceedings on March 19, 2002, in the Northern District of Ohio. Carter eventually filed a third amended petition, along with a motion requesting a competency determination and a stay of the proceedings. The District Court granted the motion.

Following several psychiatric evaluations and a competency determination, the District Court found Carter incompetent to assist counsel. Applying the Ninth Circuit's test in *Rohan*, it determined that Carter's assistance was required to develop four of his exhausted claims. As a

result, the court dismissed his habeas petition without prejudice and prospectively tolled the statute of limitations. *Carter* v. *Bradshaw*, 583 F. Supp. 2d 872, 884 (2008). The State appealed.

The Sixth Circuit acknowledged that "[f]ederal habeas petitioners facing the death penalty for state criminal convictions do not enjoy a constitutional right to competence." *Carter* v. *Bradshaw*, 644 F. 3d 329, 332 (2011). It nevertheless located a statutory right to competence in §4241, relying, in part, on this Court's decision in *Rees* v. *Peyton*, 384 U. S. 312 (1966) (*per curiam*) (*Rees I*).[1]  644 F. 3d, at 332. The Sixth Circuit explained:

> "By applying section 4241 to habeas actions, *Rees* addresses the situation where a habeas petitioner awaiting the death penalty may seek to forego any collateral attacks on his conviction or sentence, and defines a statutory right for the petitioner to be competent enough to (1) understand the nature and consequences of the proceedings against him, and (2) assist properly in his defense." *Id.*, at 333.

The court concluded that "[a]nytime a capital habeas petitioner affirmatively seeks to forego his habeas petition, whether by action or inaction, . . . a district court may employ section 4241." *Id.*, at 334.

The court therefore amended the District Court's judgment and ordered that Carter's petition be stayed indefinitely with respect to any claims that required his assistance. *Id.*, at 336–337. Judge Rogers dissented, arguing that there was no constitutional or statutory basis for the court's decision. *Id.*, at 337–342.

We granted certiorari to determine whether §4241 provides a statutory right to competence in federal habeas

--------

[1] In *Rees*, we held indefinitely a petition for certiorari after an incompetent capital inmate sought to withdraw his petition prior to our review. 384 U. S., at 313–314. See *infra*, at 12–14.

proceedings. 565 U. S. ___ (2012).

## II

Both the Ninth and Sixth Circuits have concluded that death row inmates pursuing federal habeas are entitled to a suspension of proceedings when found incompetent. The Ninth Circuit located this right in §3599, while the Sixth Circuit located it in §4241. Neither section provides such a right.

## A

Section 3599(a)(2) guarantees federal habeas petitioners on death row the right to federally funded counsel.[2] The statute provides that petitioners who are "financially unable to obtain adequate representation . . . shall be entitled to the appointment of one or more attorneys." Appointed attorneys are required to have experience in death penalty litigation, §§3599(b)–(d), and, once appointed, are directed to "represent the defendant throughout every subsequent stage of available judicial proceedings," §3599(e). The statute also gives district courts the power to authorize funding for "investigative, expert, or other services" as are "reasonably necessary for the representation of the defendant." §3599(f). But §3599 does not direct district courts to stay proceedings when habeas petitioners are found incompetent.[3]

––––––––––

[2] "In any postconviction proceeding under [28 U. S. C. §2254 or §2255], seeking to vacate or set aside a death sentence, any defendant who is or becomes financially unable to obtain adequate representation or investigative, expert, or other reasonably necessary services shall be entitled to the appointment of one or more attorneys and the furnishing of such other services in accordance with subsections (b) through (f)." 18 U. S. C. §3599(a)(2).

[3] In fact, §3599(e), which contains the section's sole reference to "competency," cuts against the Ninth Circuit's conclusion. That section provides that appointed attorneys "shall also represent the defendant in such competency proceedings and proceedings for executive or other clemency as may be available to the defendant." We doubt that Con-

In addition to lacking any basis in the statutory text, the assertion that the right to counsel implies a right to competence is difficult to square with our constitutional precedents.  The right to counsel is located in the Sixth Amendment.  ("In all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence.")  If the right to counsel carried with it an implied right to competence, the right to competence at trial would flow from the Sixth Amendment.  But "[w]e have repeatedly and consistently recognized that 'the criminal trial of an incompetent defendant violates *due process*,'" not the Sixth Amendment.  *Cooper* v. *Oklahoma*, 517 U. S. 348, 354 (1996) (quoting *Medina* v. *California*, 505 U. S. 437, 453 (1992); emphasis added); see also *Drope* v. *Missouri*, 420 U. S. 162, 172 (1975) ("[T]he failure to observe procedures adequate to protect a defendant's right not to be tried or convicted while incompetent to stand trial deprives him of his due process right to a fair trial" (citing *Pate* v. *Robinson*, 383 U. S. 375, 385 (1966))).

It stands to reason that the benefits flowing from the right to counsel *at trial* could be affected if an incompetent defendant is unable to communicate with his attorney.  For example, an incompetent defendant would be unable to assist counsel in identifying witnesses and deciding on a trial strategy.  For this reason, "[a] defendant may not be put to trial unless he '"has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding . . . [and] a rational as well as factual understanding of the proceedings against him."'"  *Cooper*, *supra*, at 354 (quoting *Dusky* v. *United States*, 362 U. S. 402 (1960) (*per curiam*)).  Notwithstanding the connection between the right to competence at trial and the right to counsel at trial, we have never said that the right to com-

_____

gress would have authorized counsel to represent inmates in postconviction competency proceedings *only* if the inmates were competent.

petence *derives from* the right to counsel. We will not assume or infer that Congress intended to depart from our precedents and locate a right to competence in federal habeas proceedings within the right to counsel. "We normally assume that, when Congress enacts statutes, it is aware of relevant judicial precedent." *Merck & Co.* v. *Reynolds*, 559 U. S. \_\_\_, \_\_\_ (2010) (slip op., at 12).

The Ninth Circuit located a statutory right to competence in §3599. 623 F. 3d, at 1245 (citing *Rohan*, 334 F. 3d 803, and *Nash*, 581 F. 3d 1048). Because *Rohan* is the Ninth Circuit's controlling precedent, we briefly address that decision.

In *Rohan*, a habeas petitioner asserted a right to competency based both on the Due Process Clause and on 21 U. S. C. §848(q)(4)(B) (2000 ed.). After discussing the history of the common law, which prohibited the indictment, trial and execution of mentally incompetent defendants,[4] the Court of Appeals stated that the petitioner's due process claim raised "substantial" "constitutional questions." *Rohan*, 334 F. 3d, at 814. This conclusion is puzzling in light of the Ninth Circuit's acknowledgment that there is "no constitutional right to counsel on habeas," *id.*, at 810 (citing *Murray* v. *Giarratano*, 492 U. S. 1, 10 (1989) (plurality opinion)), and that "there is no due process right to collateral review at all," 334 F. 3d, at 810 (citing *United*

––––––––––

[4] Blackstone explained the common-law rule as follows:

"[I]f a man in his sound memory commits a capital offence, and before arraignment for it, he becomes mad, he ought not to be arraigned for it; because he is not able to plead to it with that advice and caution that he ought. And if, after he has pleaded, the prisoner becomes mad, he shall not be tried; for how can he make his defence? If, after he be tried and found guilty, he loses his senses before judgment, judgment shall not be pronounced; and if, after judgment, he becomes of nonsane memory, execution shall be stayed: for peradventure, says the humanity of the English law, had the prisoner been of sound memory, he might have alleged something in stay of judgment or execution." 4 W. Blackstone, Commentaries on the Laws of England 24–25 (1769).

*States* v. *MacCollom*, 426 U. S. 317, 323 (1976) (plurality opinion)).    The Ninth Circuit was simply incorrect in suggesting that, in this case, there might be a constitutional concern—much less a "substantial" one—raised by the petitioner's due process claim.

Invoking the canon of constitutional avoidance, the Ninth Circuit gave the petitioner the practical benefit of a due process right to competence in federal habeas proceedings through its interpretation of §848(q)(4)(B).[5]   334 F. 3d, at 814.   In analyzing that statute, the *Rohan* court relied on a Ninth Circuit en banc opinion in *Calderon* v. *United States Dist. Court for Central Dist. of Cal.*, 163 F. 3d 530 (1998) (*Kelly V*), overruled in unrelated part, *Woodford* v. *Garceau*, 538 U. S. 202 (2003), which held that a prisoner's incompetence is grounds for equitably tolling the Antiterrorism and Effective Death Penalty Act of 1996's (AEDPA) 1-year statute of limitations for filing habeas petitions.   The *Rohan* court purported to be bound by the "rationale" of *Kelly V*—that a prisoner's incompetence could "eviscerate the statutory right to counsel,"[6]

——————

[5] As noted *supra*, at 2, §848(q)(4)(B) has been superseded by 18 U. S. C. §3599(a)(2).

[6] It is unclear how *Kelly V*'s determination that mental incompetence is grounds for AEDPA equitable tolling could possibly control the outcome in *Rohan*, which had nothing to do with AEDPA's statute of limitations.   The relevant questions for equitable tolling purposes are whether the petitioner has "'been pursuing his rights diligently'" and whether "'some extraordinary circumstance stood in his way.'"   *Holland* v. *Florida*, 560 U. S. ___, ___ (2010) (slip op., at 16–17) (quoting *Pace* v. *DiGuglielmo*, 544 U. S. 408, 418 (2005)).   But the propriety of equitably tolling AEDPA's statute of limitations in the case of a mentally incompetent petitioner has nothing to do with the statutory right to counsel.   The Ninth Circuit has held that habeas petitioners who do *not* have a statutory right to counsel (*i.e.,* all habeas petitioners other than those on death row) may still avail themselves of equitable tolling if they are mentally incompetent.   See, *e.g., Bills* v. *Clark*, 628 F. 3d 1092, 1097 (2010) (establishing standard for deciding equitable tolling claims predicated on mental incompetence); *Laws* v. *Lamarque*, 351 F. 3d 919,

*Kelly V*, *supra*, at 541—and concluded that "[i]f a petitioner's statutory rights depend on his ability to communicate rationally, compelling him to pursue relief while incompetent is no less an infringement than dismissing his late petition." 334 F. 3d, at 814.

We are not persuaded by the Ninth Circuit's assertion that a habeas petitioner's mental incompetency could "eviscerate the statutory right to counsel" in federal habeas proceedings. Given the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence. Indeed, where a claim is "adjudicated on the merits in State court proceedings," 28 U. S. C. §2254(d) (2006 ed.), counsel should, in most circumstances, be able to identify whether the "adjudication . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," §2254(d)(1), without any evidence outside the record. See *Cullen* v. *Pinholster*, 563 U. S. ___, ___ (2011) (slip op., at 9) ("[R]eview under [28 U. S. C.] §2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits. . . . This backward-looking language requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time—*i.e.,* the record before the state court"). Attorneys are quite capable of reviewing the state-court record, identifying legal errors, and marshaling relevant arguments, even without their clients' assistance.

*Rohan* also cited *Rees I*, 384 U. S. 312, in support of its conclusion. 334 F. 3d, at 815. In *Rees I*, a state inmate on

————

924–925 (2003) (recognizing that mental incompetence can give rise to equitable tolling for AEDPA's statute of limitations).

death row filed a petition for a writ of habeas corpus in District Court, alleging that the state-court conviction violated his constitutional rights. 384 U. S., at 313. The District Court denied his petition, and the Court of Appeals affirmed. *Ibid.* Shortly after Rees' counsel filed a petition for certiorari with this Court, Rees directed his counsel to withdraw the petition and to forgo any further proceedings. Counsel advised the Court that he could not accede to these instructions without a psychiatric evaluation of Rees, because there was some doubt as to Rees' mental competency. *Ibid.* In response, the Court directed the District Court to determine Rees' mental competence. *Id.*, at 313–314. After the District Court conducted a hearing and found Rees incompetent, the Court issued a one-sentence order directing that the petition for certiorari be "held without action." *Rees* v. *Peyton*, 386 U. S. 989 (1967) (*Rees II*).[7] When Rees died several decades later, the Court dismissed the petition. *Rees* v. *Superintendent of Va. State Penitentiary*, 516 U. S. 802 (1995) (*Rees III*).

The Ninth Circuit concluded that "[t]he record in *Rees II* shows that incompetence is grounds for staying habeas proceedings." *Rohan, supra*, at 815. This conclusion is unwarranted. *Rees I* concerned whether an incompetent habeas petitioner may withdraw his certiorari petition,

———————

[7] This order was issued after the Clerk of the Court spoke with the attorneys for Virginia and for the petitioner and proposed that the Court hold the petition indefinitely. See Memorandum from John F. Davis, Clerk of Court, to The Chief Justice (Mar. 31, 1967); see also Crocker, Not To Decide Is To Decide: The U. S. Supreme Court's Thirty-Year Struggle With One Case About Competency To Waive Death Penalty Appeals, 49 Wayne L. Rev. 885, 916 (2004). Although Virginia originally opposed the idea of an indefinite stay, see Memorandum for Respondent in *Rees* v. *Peyton,* O. T. 1966, No. 9, Misc., pp. 2–3 (Mar. 14, 1967), it eventually accepted the proposal, see Memorandum from John F. Davis, *supra*, at 2 ("In summary, counsel for both parties do not really present any objection to the procedure proposed in the case, but neither of them accepts it with enthusiasm").

and it provides no clear answer even to that question. Likewise, the unique, one-sentence order in *Rees II* offered no rationale for the decision to hold Rees' petition. As a result, *Rees* offers no support for federal habeas petitioners seeking to stay district court proceedings or for the Ninth Circuit's opinions in *Rohan*, *Nash*, or this case.[8]

Gonzales barely defends the Ninth Circuit's interpretation of §3599.[9] He offers a single, halfhearted argument in support of the Ninth Circuit's opinion based on our statement in *McFarland* v. *Scott*, 512 U. S. 849, 858 (1994), that "the right to counsel necessarily includes a right for that counsel meaningfully to research and present a defendant's habeas claims." But *McFarland* was addressing whether a district court could issue a *stay of execution* after a capital prisoner had filed a request for counsel but before he had filed his habeas petition. *Id.*, at 854–858. We held that a district court may stay a capital prisoner's execution once the prisoner has invoked his statutory right to counsel. *Id.,* at 859. *McFarland* has no relevance

––––––––––

[8]Moreover, we note that *Rees* is a pre-AEDPA case. To whatever, extent *Rees* can be read to provide guidance in the habeas context, that guidance must pass muster under AEDPA.

[9]See Brief for Respondent in No. 10–930, p. 13 ("The State and the Solicitor General argue that the federal habeas right-to-counsel provision, 18 U. S. C. §3599(a)(2), should not be interpreted to create a 'right to competence' .... However, that is not the question presented in this case. The issue is whether courts have authority to issue a stay, not whether capital habeas petitioners enjoy a freestanding 'right to competence,' or what the contours of such a right may be. The Court need not reach that question in order to uphold the discretionary, and temporary, stay of proceedings issued in this case"). Notwithstanding Gonzales' attempt to rewrite the question presented, we granted certiorari on the following question:

"Did the Ninth Circuit err when it held that 18 U. S. C. §3599(a)(2)—which provides that an indigent capital state inmate pursuing federal habeas relief 'shall be entitled to the appointment of one or more attorneys'—impliedly entitles a death row inmate to stay the federal habeas proceedings he initiated if he is not competent to assist counsel?

here where Gonzales is not seeking a stay of execution, but rather a stay of the District Court's proceedings. Moreover, Gonzales moved for a stay more than six years after initiating his habeas petition. This was certainly ample time for his attorney to research and present the claims.

For the foregoing reasons, we hold that §3599 does not provide federal habeas petitioners with a "statutory right" to competence.[10]

B

The Sixth Circuit reached the same conclusion as the Ninth Circuit but located the statutory right to competence during habeas proceedings in 18 U. S. C. §4241. Relying largely on *Rees I*, the Sixth Circuit concluded that §4241 provides a statutory right to competence. 644 F. 3d, at 333. But as discussed, Part II–A, *supra*, *Rees I* did not recognize a statutory right to competence in federal habeas proceedings.[11] Moreover, §4241 does not even apply to

--------

[10] Gonzales suggests that 28 U. S. C. §2251 supports the Ninth Circuit's decision. But §2251 merely provides district courts with the statutory authority to stay *state-court proceedings* pending the resolution of federal habeas proceedings. Section 2251 says nothing about whether a habeas petitioner is entitled to a stay of the *district court's* proceedings pending his return to competence.

[11] The Sixth Circuit made much of the fact that *Rees I* cited 18 U. S. C. §§4244–4245, the predecessors of §4241. But that citation provides no support for a statutory right to competence. In *Rees I*, as part of our direction to the District Court, we said that it would "be appropriate for the District Court to subject Rees to psychiatric and other appropriate medical examinations and, so far as necessary, to temporary federal hospitalization for this purpose. Cf. 18 U. S. C. §§4244–4245 (1964 ed.)." 384 U. S., at 314. The citation to §§4244–4245 did nothing more than point the District Court to those sections of the Criminal Code that set forth the proper procedures for conducting a competency hearing. There would have been little point in this Court's directing the District Court to reinvent the wheel when §4244 already provided a rubric for conducting such a hearing.

such proceedings. Section 4241(a) provides:

> "At any time after the commencement of a prosecution
> for an offense and prior to the sentencing of the de-
> fendant, or at any time after the commencement of
> probation or supervised release and prior to the com-
> pletion of the sentence, the defendant or the attorney
> for the Government may file a motion for a hearing
> to determine the mental competency of the defendant.
> The court shall grant the motion, or shall order such a
> hearing on its own motion, if there is reasonable cause
> to believe that the defendant may presently be suf-
> fering from a mental disease or defect rendering him
> mentally incompetent to the extent that he is unable
> to understand the nature and consequences of the
> proceedings against him or to assist properly in his
> defense."

By its own terms, §4241 applies only to trial proceedings
prior to sentencing and "at any time after the commence-
ment of probation or supervised release." Federal habeas
proceedings, however, commence after sentencing, and
federal habeas petitioners, by definition, are incarcerated,
not on probation.

Furthermore, §4241, like the rest of Title 18 generally,
applies exclusively to *federal* defendants and probationers
subject to prosecution by the United States. Carter is not,
and does not claim to be, a federal defendant. Rather, he
is a *state* prisoner challenging the basis of his conviction in
a federal civil action. See *Blair* v. *Martel*, 645 F. 3d 1151,
1155 (CA9 2011) ("By its own terms, §4241 does not apply
unless a federal criminal defendant is on trial or is re-
leased on probation").

Finally, §4241(a) authorizes the district court to grant a
motion for a competency determination if there is reason-
able cause to believe that the defendant's mental incompe-
tence renders him "unable to understand the nature and

consequences of the *proceedings against* him or to assist
properly in his *defense*." (Emphasis added.) See also
§4241(d).[12] A habeas proceeding under §2254, however, is
not a "proceedin[g] against" the habeas petitioner; this, on
the other hand, is a civil action *against* the warden of the
state prison. And, a federal habeas petitioner does not
mount a "defense" to the government's prosecution. Rather,
the petitioner collaterally attacks his conviction at an
earlier state trial. Accordingly, the statutory right to com-
petence provided in §4241 is simply inapplicable to federal
habeas proceedings.

We would address Carter's arguments in defense of the
Sixth Circuit's decision, but, there are none. Carter's brief
informed us that "[t]his Court need not consider the statu-
tory argument with which the [petitioner's] brief begins—
i.e., that there is no 'statutory right' under 18 U. S. C.
§4241 to be competent in habeas proceedings." Brief for
Respondent in No. 11–218, p. 15. Apparently, Carter
found the Sixth Circuit's reasoning indefensible. We
agree.

### III

Both Gonzales and Carter argued at length in their
briefs and at oral argument that district courts have the
equitable power to stay proceedings when they determine
that habeas petitioners are mentally incompetent.[13] Nei-

———————

[12] Section 4241(d) provides, in relevant part:

"If, after the hearing, the court finds by a preponderance of the
evidence that the defendant is presently suffering from a mental dis-
ease or defect rendering him mentally incompetent to the extent that
he is unable to understand the nature and consequences *of the proceed-
ings against him* or to assist properly in his *defense*, the court shall
commit the defendant to the custody of the Attorney General." (Empha-
sis added.)

[13] This argument is especially curious coming from Gonzales, because
the District Court *denied* his request for a stay. For Gonzales to prevail
on his "equitable discretion" theory, Tr. of Oral Arg. in No. 10–930,

ther petitioner disputes that "[d]istrict courts . . . ordinarily have authority to issue stays, where such a stay would be a proper exercise of discretion." *Rhines* v. *Weber,* 544 U. S. 269, 276 (2005) (citation omitted); see also *Enelow* v. *New York Life Ins. Co.,* 293 U. S. 379, 382 (1935) (explaining that a district court may stay a case "pending before it by virtue of its inherent power to control the progress of the cause so as to maintain the orderly processes of justice"). Similarly, both petitioners agree that "AEDPA does not deprive district courts of [this] authority." *Rhines, supra,* at 276. Petitioners and respondents disagree, however, about the types of situations in which a stay would be appropriate and about the permissible duration of a competency-based stay. We do not presume that district courts need unsolicited advice from us on how to manage their dockets. Rather, the decision to grant a stay, like the decision to grant an evidentiary hearing, is "generally left to the sound discretion of district courts." *Schriro* v. *Landrigan,* 550 U. S. 465, 473 (2007). For purposes of resolving these cases, it is unnecessary to determine the precise contours of the district court's discretion to issue stays. We address only its outer limits.

## A

In Gonzales' case, the District Court correctly found that all of Gonzales' properly exhausted claims were record based or resolvable as a matter of law, irrespective of Gonzales' competence.[14]  617 F. Supp. 2d, at 863; see also

———————

p. 33, we would have to conclude that the District Court abused its discretion in *denying* the stay. But Gonzales has not argued that the District Court abused its discretion by denying his stay motion. Gonzales' arguments, thus, have little to do with the facts of his case.

[14] Gonzales alleges that the trial judge refused to recuse himself; that he was prejudiced by the presence of the victim's wife in the courtroom during jury selection and following her testimony; that the wife's in-court identification was tainted; that there was insufficient evidence to support two aggravating factors found by the judge; and that Arizona's

*State* v. *Gonzales*, 181 Ariz. 502, 509–515, 892 P. 2d 838, 845–851 (1995) (adjudicating Gonzales' claims on the merits). The court therefore denied Gonzales' motion for a stay. The District Court did not abuse its discretion in so holding, because a stay is not generally warranted when a petitioner raises only record-based claims subject to 28 U. S. C. §2254(d). As previously noted, review of such claims "is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U. S., at ___ (slip op., at 9). Accordingly, any evidence that a petitioner might have would be inadmissible. *Ibid.* ("[T]he record under review is limited to the record in existence at that same time—*i.e.,* the record before the state court"). Because federal habeas is "a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal," the types of errors redressable under §2254(d) should be apparent from the record. *Harrington* v. *Richter*, 562 U. S. ___, ___ (2011) (slip op., at 13) (quoting *Jackson* v. *Virginia*, 443 U. S. 307, 332, n. 5 (1979) (Stevens, J., concurring in judgment)). Counsel can read the record.

B

In Carter's case, the District Court concluded that four of Carter's claims could potentially benefit from Carter's assistance.[15] However, three of these claims were adjudicated on the merits in state postconviction proceedings and, thus, were subject to review under §2254(d). See *State* v. *Carter*, No. 99–T–0133, 2000 Ohio App. LEXIS 5935, *5–*13 (Dec. 15, 2000). Any extrarecord evidence

———————

statutory death penalty scheme unconstitutionally precludes the sentencer from considering all mitigating evidence.

[15] Claim one alleges that Carter was incompetent to stand trial and was unlawfully removed from the trial proceedings. Claims two, five, and six are ineffective-assistance-of-counsel claims.

that Carter might have concerning these claims would therefore be inadmissible. *Pinholster*, *supra,* at \_\_\_. Consequently, these claims do not warrant a stay.

It is unclear from the record whether Carter exhausted the fourth claim.[16] If that claim was exhausted, it too would be record based. But even if Carter could show that the claim was both unexhausted and not procedurally defaulted,[17] an indefinite stay would be inappropriate. "AEDPA's acknowledged purpose" is to "'reduc[e] delays in the execution of state and federal criminal sentences.'" *Schriro, supra,* at 475 (quoting *Woodford,* 538 U. S., at 206). "Staying a federal habeas petition frustrates AEDPA's objective of encouraging finality by allowing a petitioner to delay the resolution of the federal proceedings." *Rhines,* 544 U. S., at 277. In the context of discussing stay and abeyance procedures, we observed:

> "[N]ot all petitioners have an incentive to obtain federal relief as quickly as possible. In particular, capital petitioners might deliberately engage in dilatory tactics to prolong their incarceration and avoid execution of the sentence of death. Without time limits [on stays], petitioners could frustrate AEDPA's goal of finality by dragging out indefinitely their federal habeas review." *Id.,* at 277–278.

---

[16] The fourth claim alleges ineffective assistance of appellate counsel for not raising trial counsel's failure to pursue the competency-at-trial issue. It is unclear from the record whether Carter presented this claim to the Ohio Court of Appeals on state postconviction review, and there is no mention of this claim in that court's opinion. In the District Court, the State argued that certain claims were procedurally defaulted, see *Carter* v. *Bradshaw,* 583 F. Supp. 2d 872, 880 (ND Ohio 2008), but the court deferred ruling on this argument. The State was likely referring to claim four. We, therefore, leave the resolution of this claim to the District Court on remand.

[17] In *Cullen* v. *Pinholster,* 563 U. S. \_\_\_, \_\_\_ (2011) (slip op., at 14, n. 10), we did "not decide where to draw the line between new claims and claims adjudicated on the merits."

The same principle obtains in the context of competency-based stays.  At some point, the State must be allowed to defend its judgment of conviction.[18]

If a district court concludes that the petitioner's claim could substantially benefit from the petitioner's assistance, the district court should take into account the likelihood that the petitioner will regain competence in the foreseeable future.  Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment.

## IV

The judgment of the Ninth Circuit is reversed.  We vacate the judgment of the Sixth Circuit and remand the case for proceedings consistent with this opinion.

*It is so ordered.*

_____

[18] Our opinion today does not implicate the prohibition against "'carrying out a sentence of death upon a prisoner who is insane.'"  *Panetti* v. *Quarterman*, 551 U. S. 930, 934 (2007) (quoting *Ford* v. *Wainwright*, 477 U. S. 399, 409–410 (1986)).