In the

# United States Court of Appeals

## For the Seventh Circuit

_____

Nos. 14-3359, 04-3549, 06-2905

ERIC D. HOLMES,

*Petitioner-Appellant,*

*v.*

RON NEAL, Superintendent, Indiana State Prison,

*Respondent-Appellee.*

_____

Appeals from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
Nos. 1:00-cv-01477-SEB-DML — **Sarah Evans Barker**, *Judge*
and 1:05-cv-01763-LJM-WTL — **Larry J. McKinney**, *Judge*.

_____

ARGUED MARCH 1, 2016 — DECIDED MARCH 22, 2016

_____

Before WOOD, *Chief Judge*, and POSNER and FLAUM, *Circuit Judges*.

POSNER, *Circuit Judge*. In 1992 the petitioner, Eric Holmes, was convicted of a pair of murders committed three years earlier, and the following year he was sentenced to death. On the day of the murders he'd gotten into an argument with a co-worker at the Shoney's restaurant where he worked. He and a man named Michael Vance approached

the co-worker and two of the restaurant's managers, one of whom was carrying the till (containing money) out of the restaurant. They trapped the three in the foyer of the restaurant, stabbed them multiple times, and took the till. Two of the victims died.

Holmes's conviction and sentence were affirmed and post-conviction relief was denied. *Holmes v. State*, 671 N.E.2d 841 (Ind. 1996); *State v. Holmes*, 728 N.E.2d 164 (Ind. 2000). After exhausting state remedies he sought federal habeas corpus, challenging his conviction and sentence on eighteen different grounds and also claiming that he wasn't mentally competent to assist his lawyers in the habeas corpus proceeding. The district judge ruled that he was competent and having done so denied his claims on the merits. He appealed, and we held that doubts of his competence remained of sufficient gravity to warrant further consideration by the district court, and so we remanded the case. *Holmes v. Buss*, 506 F.3d 576 (7th Cir. 2007). On remand the district court again found Holmes competent and reinstated the denial of his claims, and again we reversed, this time instructing the district court to suspend the habeas corpus proceeding "unless and until the state provides substantial new evidence that Holmes's psychiatric illness has abated, or its symptoms are sufficiently controlled, to justify the resumption of the proceeding." *Holmes v. Levenhagen*, 600 F.3d 756, 763 (7th Cir. 2010). In so ruling we relied in part on *Rohan ex rel. Gates v. Woodford*, 334 F.3d 803, 812–13 (9th Cir. 2003), a decision that "impl[ied] a right to competence from a right to counsel." On remand from our decision in *Holmes v. Levenhagen* the district court granted the stay, thereby placing the habeas corpus proceeding in legal limbo.

So matters stood until 2013, when the respondent (the current superintendent of the prison in which Holmes is held) moved the district court to lift the stay and dismiss the habeas corpus proceeding with prejudice, on the authority of the Supreme Court's then-recent decision in *Ryan v. Gonzales*, 133 S. Ct. 696, 703 (2013). Contrary to the Ninth Circuit's decision in *Rohan*, *Ryan v. Gonzales* rejected "the assertion that the right to counsel implies a right to competence." (Gonzales, like Holmes in our case, had been convicted of murder and sentenced to death and had then sought habeas corpus in federal court.) The Supreme Court went on to say that "the District Court correctly found that all of Gonzales' properly exhausted claims were record based or resolvable as a matter of law, irrespective of Gonzales' competence. The court therefore denied Gonzales' motion for a stay. The District Court did not abuse its discretion in so holding, because a stay is not generally warranted when a petitioner raises only record-based claims subject to 28 U.S.C. § 2254(d)." 133 S. Ct. at 708 (citations omitted). Section 2254(d) states that "an application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." Because "review of such claims 'is limited to the record that was before the state court that adjudicated the claim on the merits …, any *evidence* that a petitioner might

have would be inadmissible." *Ryan v. Gonzales*, *supra*, 133 S. Ct. at 708 (emphasis added and citations omitted).

As the district court recognized in its latest decision in the present litigation, the substantive claims presented in Holmes's petition for habeas corpus are "record-based" claims. The substantive claims that the state courts had resolved against him could be reconsidered by the federal courts only on the basis of the state-court record and thus only as authorized by section 2254(d). Some of the claims had not been presented to the state courts, yet those claims too could be resolved on the basis of the state-court record.

The *Ryan* decision approves denying a stay of the habeas corpus proceeding when sought on the ground of the petitioner's incapacity to consult with counsel until the petitioner's recovery from the incapacity (which may never come). If an incompetent client is giving nonsensical orders to counsel and otherwise acting contrary to his or her own best interests, the sensible judicial response is to appoint a guardian rather than to stay the case ad infinitum, for "at some point the State must be allowed to defend its judgment of conviction." 133 S. Ct. at 709. In reliance on *Ryan* the respondent (the prison superintendent) in our case asked the district court to lift the stay of the habeas corpus proceeding and reinstate the earlier dismissal of Holmes's petition for habeas corpus. The court obliged.

Holmes has appealed both rulings—his briefs run to 190 pages. The appeal from the decision to lift the stay and therefore reinstate the dismissal of Holmes's claims is docketed as No. 14-3359 in our court, and the appeal from the 2004 order dismissing Holmes's claims (the order that was reinstated) as No. 04-3549. Although no guardian has been

appointed to represent Holmes in this appeal, we decline to reinstitute the stay because all his claims can be decided on the basis of the state-court record, as we'll now show. (The third appeal, No. 06-2905, has to be dismissed for lack of federal jurisdiction, because the case underlying it remains pending in the district court, and that court hasn't issued any appealable order.)

A number of Holmes's claims have been defaulted—that is, not preserved in the state court proceedings—and so can't be reviewed by us without a convincing excuse for the default. An example is the claim that the prosecution tried to prevent blacks and women from serving on the jury, in part by questioning prospective black and female jurors inappropriately.

A claim that has not been defaulted (because it had been raised in the state court proceedings and so was preserved) concerns the closing argument of defense counsel in the penalty phase of the trial, when he said he wasn't afraid to cry and beg for mercy for his client. On rebuttal the prosecutor told the jury that the defense counsel wasn't "ashamed to cry, because he cries in every case" and that he—the prosecutor—was in court to fight for the defendant's victims and that it was a shame he hadn't been allowed to present evidence about them. He had pictures of the victims in his hands as he said this even though he'd been forbidden by the judge's grant of a motion *in limine* to show the jury the pictures.

In response to the defense counsel's objection to the prosecutor's cry-baby statements, the judge struck them from the trial record. When the prosecutor defiantly persisted, the judge ordered the jury removed from the court room

and entertained but ultimately denied a motion for a mistrial. With the jury out the judge reprimanded the prosecutor, who when the jury returned apologized to the jury, the judge, and the opposing counsel. The judge told the jury to disregard the prosecutor's previous remarks. The most objectionable such remark was that the defense counsel cries in *every* case, as it might be taken to imply that he was shedding crocodile tears in this one. But the judge was entitled to decide, as she did, that given the length and emotionality of the trial the prosecutor's outburst was unlikely to have affected the jury's verdict—which moreover under Indiana law at the time was only advisory; the judge had the ultimate sentencing authority and the objectionable remarks had been made in the penalty phase of the trial. See *Darden v. Wainwright*, 477 U.S. 168, 179–83 (1986).

Another claim that was not defaulted relates to testimony by the deputy sheriff who had driven Holmes to jail after his arrest. He testified that Holmes had said "first degree murder" repeatedly during the drive. The deputy hadn't mentioned this to the prosecutor who tried the case until shortly before the deputy testified, though he says he'd mentioned it to others previously. The trial judge granted an overnight recess to allow defense counsel to prepare cross-examination of the deputy sheriff. Allowing a recess was preferable to granting a mistrial, the remedy urged by counsel. Nor is it apparent that Holmes was significantly harmed by the testimony; the deputy didn't say that Holmes had confessed to committing first-degree murder. Holmes has contended that the deputy sheriff's statements were false, but there is no evidence of this besides Holmes's say-so. He makes similar claims concerning the testimony of the surviving victim of

the murder spree and the girlfriend of his accomplice's brother, but these claims were defaulted.

The defense argues that Holmes's trial lawyer rendered ineffective assistance during sentencing by not advancing certain arguments. Actually the lawyer had argued vigorously for mercy. He had pointed to Holmes's disadvantaged and abused youth, his age at the time of the murders (21), and his low IQ (79, which however is higher than 70, the conventional upper bound of serious intellectual disability). Holmes's lawyer also presented evidence that Michael Vance, who the government claimed was Holmes's accomplice, had been the leader and Holmes *his* accomplice. The evidence included testimony from Holmes's sister, and from a neuropsychologist, that Holmes was more a follower than a leader. And during his closing argument the lawyer pointed out that Vance had used violence against a woman previously, had once threatened someone with a gun, and had taken the lead after the murders in this case in arranging to clean up the traces. The trial judge remained unconvinced that Vance had been the leader of the murder spree. She relied on evidence that included Holmes's statements threatening the victim, a revenge motive, and his concealing and destroying evidence of the crime. Her decision was supported by other evidence, such as that Holmes had claimed responsibility for the killings and that he had wounds on his hands and also a significant amount of blood on him when arrested.

The defense points to specifics of Vance's history that came to light only during the state post-conviction proceedings. That history included a previous arrest for armed robbery and allegations of domestic violence, indicating that

Vance "had a violent nature … [and] a more extensive criminal history than the defendant, and … these facts were available and should have been known by counsel but were not presented at trial." *State v. Holmes*, *supra*, 728 N.E.2d at 173. Yet the Indiana Supreme Court affirmed the postconviction court's conclusion, saying that Vance's "prior misconduct was not relevant to the circumstances of the crime and the character of this defendant" and "that trial counsel presented essentially all of the same background evidence as was presented on post-conviction review and that counsel's assistance cannot be faulted as objectively unreasonable for failing to add more of the same." *Id.* at 173–74.

There is tension between the two statements we just quoted: that Holmes's lawyer should have dwelled more on Vance's history but that the history was irrelevant to whether he had been the instigator of the murders. But the lawyer's omission did not demonstrate ineffective assistance of counsel. He made the essential points about Vance during his closing argument at sentencing, pointing out that Vance's criminal history included "beating a woman" and "an incident with a gun … [where] he got angry over a traffic accident and went and got a gun to threaten someone," and the trial judge heard further evidence about Vance's involvement in this crime, including the surviving victim's testimony that it was Vance who did most of the talking rather than Holmes. Nevertheless the judge was entitled to conclude that Holmes was more culpable than Vance, since Holmes planned the murders, had a revenge motive, and tried to cover up the crime.

The jury found Holmes guilty of first-degree murder but was not asked to determine whether he was an accomplice

as opposed to the actual perpetrator and whether he intended to kill the victims. A criminal defendant "who aids and abets a felony in the course of which a murder is committed by others but who does not himself kill, attempt to kill, or intend that a killing take place or that lethal force will be employed" may not be sentenced to death. *Enmund v. Florida*, 458 U.S. 782, 797 (1982). Holmes contends (a contention that's been preserved) that the absence of a jury finding on precisely *how* he was guilty of first-degree murder makes it impossible to know whether he is eligible for the death penalty. But to convict of first-degree murder the jury had only to find, as stated in the judge's instructions, that Holmes himself had killed the victims "while committing or attempting to commit a robbery." See Ind. Code § 35-42-1-1 (1992). The "reckless disregard for human life implicit in knowingly engaging in criminal activities known to carry a grave risk of death represents a highly culpable mental state, a mental state that may be taken into account in making a capital sentencing judgment when that conduct causes its natural, though also not inevitable, lethal result." *Tison v. Arizona*, 481 U.S. 137, 157–58 (1987); see also *Schad v. Arizona*, 501 U.S. 624, 644–45 (1991) (plurality opinion). So, the jury necessarily found Holmes guilty of a crime that involves sufficient disregard for human life to allow for a death sentence.

Though the jury determined guilt on the basis of section 35-42-1-1, pursuant to Indiana's death penalty statute at the time the judge, not the jury, determined whether to impose the death penalty. Although *Ring v. Arizona*, 536 U.S. 584 (2002), holds that capital defendants are entitled to a jury determination of *any* fact on which the legislature conditions the death sentence, the holding does not apply retroactively. *Schriro v. Summerlin*, 542 U.S. 348, 358 (2004).

Holmes presents still other arguments, but we have dis-
cussed the strongest ones and adopt the district court's anal-
ysis of the others. The least of the other arguments is his
lawyers' claim to be entitled to bigger attorneys' fees than
have been awarded to them so far. That's an issue for the
district court to address in the first instance.

The challenge to the denial of a stay of the habeas corpus
proceeding having failed and the petition for habeas corpus
relief having been rejected, Holmes retains a right to a hear-
ing to determine whether he is sufficiently mentally compe-
tent to be put to death for the murders he committed. See
*Ford v. Wainwright*, 477 U.S. 399 (1986). As the Supreme
Court said in *Panetti v. Quarterman*, 551 U.S. 930, 946–47
(2007), "the statutory bar on 'second or successive' applica-
tions does not apply to a *Ford* [*v. Wainwright*] claim brought
in an application filed *when the claim is first ripe*" (emphasis
added). No such hearing has been held, because the state has
yet to set an execution date, which must precede the hearing.
*Id.* at 947; *Stewart v. Martinez-Villareal*, 523 U.S. 637, 643
(1998). We cannot jump the gun by ordering the district
court to hold such a hearing, as that would violate the re-
quirement in 28 U.S.C. § 2254(b)(1)(A) that a defendant ex-
haust all available state remedies before turning to the fed-
eral courts for relief should he strike out in the state court
system. Those remedies will not be exhausted until the Indi-
ana state courts decide whether Holmes is mentally compe-
tent to be executed.

Considering that he was convicted of the murders almost
a quarter of a century ago and that if he fails to obtain relief
in a hearing in the Indiana court system on his mental com-
petency to be executed and having thus exhausted his state

remedies files a further petition for habeas corpus in the federal district court and loses and appeals once again to us it will be the fourth time that we are called on to render a decision in this protracted litigation, we are dismayed at the prospect that looms before us of further and perhaps endless protraction of federal judicial review of Holmes's conviction and sentence. But we are obliged by section 2254(b)(1)(A) to proceed as just indicated.

In conclusion, the rulings of the district court appealed from in appeals No. 14-3359 and No. 04-3549 are affirmed, and the appeal in No. 06-2905 is dismissed.