IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

JOHN VINCENT FITZGERALD,
*Petitioner*,

*v.*

HONORABLE SAM MYERS, JUDGE OF THE SUPERIOR COURT
OF THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF MARICOPA,
*Respondent Judge*,

STATE OF ARIZONA EX REL. MARK BRNOVICH, ARIZONA ATTORNEY GENERAL,
*Real Party in Interest*.

No. CR-16-0285-PR
Filed September 26, 2017

Appeal from the Superior Court in Maricopa County
The Honorable Sam Myers, Judge
No. CR2005-111543
**AFFIRMED**

Order of the Court of Appeals, Division One
No. 1 CA-SA 16-0154
Filed Jul. 25, 2016

COUNSEL:

Randall J. Craig (argued), The Law Offices of Randall J. Craig, PLLC, Scottsdale, Attorneys for John Vincent Fitzgerald

Mark Brnovich, Arizona Attorney General, Dominic Draye, Solicitor General, Lacey Stover Gard, Chief Counsel, Capital Litigation Section, Julie A. Done (argued), Assistant Attorney General, Phoenix, Attorneys for State of Arizona

Eric John Aiken (argued), Jessica A. Gattuso, Colleen Clase, Arizona Voice for Crime Victims, Phoenix, Attorneys for Frank Fitzgerald and Mary Kennedy

Emily Skinner (argued), Arizona Capital Representation Project, Phoenix, Attorneys for Amicus Curiae Arizona Capital Representation Project

———————————

VICE CHIEF JUSTICE PELANDER authored the opinion of the Court, in which CHIEF JUSTICE BALES, JUSTICES BRUTINEL, TIMMER, BOLICK, and GOULD joined. JUDGE VÁSQUEZ* concurred in the result.

———————————

VICE CHIEF JUSTICE PELANDER, opinion of the Court:

¶1        After affirming a defendant's conviction and death sentence in a capital case, this Court is statutorily required to appoint counsel to represent the defendant in state post-conviction relief ("PCR") proceedings.  A.R.S. § 13-4041(B).  Such proceedings are governed by Arizona Rule of Criminal Procedure 32.  Rule 32.5 sets forth the required contents of a PCR petition and states that "[t]he petition shall be accompanied by a declaration by the defendant stating under penalty of perjury that the information contained is true to the best of the defendant's knowledge and belief."  Ariz. R. Crim. P. 32.5.  We hold that neither § 13-4041 nor Rule 32.5 requires a trial court to determine whether a Rule 32 petitioner is competent before proceeding with and ruling on the PCR petition.  But a court, in its discretion, may order a competency evaluation if it is helpful or necessary for a defendant's presentation of, or the court's ruling on, certain Rule 32 claims and, if so, the court should order the evaluation as soon as practicable even if the PCR proceeding is not stayed.

**I.**

¶2        In April 2005, John Vincent Fitzgerald traveled from his home in Hawaii to Arizona, where his mother Margaret (Peggy) Larkin lived in Sun City West.  He brought numerous weapons, ammunition, and tactical gear.  Fitzgerald asked Peggy's fiancé, J.T., to pick him up at his motel and to keep the visit a surprise.  They went to Peggy's house and when she answered the door, Fitzgerald pushed J.T. aside and attacked Peggy with a samurai sword.  After she fell to the floor, Fitzgerald shot her twice in the head, yelling that she was a pedophile.  Fitzgerald was arrested a few blocks away, later confessed during a police interview, and was charged with first degree murder and burglary.  The

———————————

* Justice John R. Lopez IV has recused himself from this case.  Pursuant to article 6, section 3 of the Arizona Constitution, the Honorable Garye Vásquez, Judge of the Arizona Court of Appeals, Division Two, was designated to sit in this matter.

State sought a death sentence.

**¶3**        In pretrial competency proceedings pursuant to Arizona Rule of Criminal Procedure 11, the trial court found Fitzgerald incompetent and referred him for restoration treatment.  In March 2008, based on the physicians' reports, the court found Fitzgerald had been restored to competency.  At trial, the jury rejected Fitzgerald's guilty-except-insane defense, found him guilty of both charges, and found three aggravating circumstances.  In the penalty phase, after Fitzgerald had an emotional outburst during victim impact statements, the trial court ordered another Rule 11 competency evaluation and declared a mistrial.  Fitzgerald was found incompetent and again underwent restoration treatment. The parties later stipulated that he was restored to competency.  A new penalty-phase jury determined that Fitzgerald should be sentenced to death for the murder.  The trial court imposed that sentence and also sentenced Fitzgerald to a prison term for the burglary conviction.

**¶4**        This Court affirmed the convictions and sentences.  *State v. Fitzgerald*, 232 Ariz. 208, 217 ¶ 51 (2013).  In late 2013, attorney Randall Craig was appointed to represent Fitzgerald in this Rule 32 PCR proceeding.  Craig initially reported that he "always noticed delusional behavior" exhibited by Fitzgerald, but that they "could hold meaningful meetings and discussions" about preparing the PCR petition.  Over time, however, Craig noticed "a slow decline in [Fitzgerald's] ability to hold a meaningful conversation."  In November 2015, Fitzgerald refused to meet with the mitigation specialist, who opined that Fitzgerald's competency was deteriorating quickly.  Craig "did not notice this decline in telephone conversations or visits at that time although [Fitzgerald] did appear to suffer from paranoid episodes."  At that time, Fitzgerald's prison mental health records did not reveal a change in mental health status except for notations about paranoia.

**¶5**        Prison records indicate that Fitzgerald refused his medication in December 2015 because he believed he was being poisoned, he was experiencing audio and visual hallucinations, and he refused to be treated or evaluated.  The next month, Fitzgerald met with defense team members but accused them of conspiring to harm him.  After receiving a letter from Fitzgerald that caused greater concern about his mental status, Craig retained Dr. Alan Abrams and Dr. Bhushan Agharkar to evaluate competency, but Fitzgerald refused to be evaluated, claiming they were part of the "illuminati."  Finally, in March 2016, Fitzgerald was evaluated by Dr. Agharkar, who concluded that Fitzgerald could not rationally assist counsel in preparing the PCR petition and was "incompetent to proceed" with the PCR proceedings.

**¶6**        In May, Fitzgerald moved the superior court to conduct a hearing to determine competency and to stay all PCR proceedings until the court found him

competent. Fitzgerald argued that § 13-4041(B) and Rule 32.5 establish a defendant's right to competency during PCR proceedings. After the State and the victims responded, the superior court denied the motion, finding that "at this stage of the current proceedings [Fitzgerald's] competence is not necessary to assist PCR counsel or the Court" and that Fitzgerald "does not have a right to a competency determination at this point in a post-conviction proceeding." The court of appeals declined jurisdiction of Fitzgerald's petition for special action.

¶7 Fitzgerald then petitioned for special action relief in this Court.[1] Treating that filing as a petition for review, we granted review because whether a convicted capital defendant is entitled under Arizona's statutes or rules to a competency determination in PCR proceedings is a recurring issue of statewide importance, and the issue has resulted in inconsistent rulings in the superior court. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution and A.R.S. § 12-120.24.

**II.**

¶8 The issues raised in Fitzgerald's petition for review are whether the superior court's order denying his motion to determine competency in his PCR proceeding violated his rights under § 13-4041(B) "to effectively and completely communicate with his appointed counsel" in Rule 32 PCR proceedings, and under Rule 32.5 "to effectively and competently determine if the information in the [PCR petition] is true and accurate." We address only those issues, not any belatedly raised constitutional issues, and limit our analysis to this post-conviction, capital case context.[2] Because the

---

[1] Fitzgerald also moved to stay the PCR proceeding pending our review. After this Court denied the stay request, in October 2016, Fitzgerald filed his PCR petition in the superior court. In May 2017, the superior court summarily dismissed the petition in its entirety, finding none of the eighteen claims asserted therein colorable. *See* Ariz. R. Crim. P. 32.6(c) (stating that "the court shall order the petition dismissed" if the claims present no "material issue of fact or law which would entitle the defendant to relief" under Rule 32). That order is not before this Court.

[2] At oral argument in this Court, consistent with his briefs, Fitzgerald acknowledged that his asserted right to competency in PCR proceedings was based solely on statute and this Court's rules. Later, in a filing titled "Notice of Supplemental Authority," Fitzgerald described that acknowledgment as "inadvertent[]" and argued for the first time that his asserted right to competency is instead "based in state and federal due process." Issues and arguments not raised in briefs but rather first presented at or after oral argument, including constitutional issues, generally are deemed waived. *See State v. McCall*, 139 Ariz. 147, 163–64 (1983); *State v. Smith*, 125 Ariz. 412, 416 (1980); Ariz. R. Crim. P. 31.19(c).

issues here turn on statutory and rule interpretation, our review is de novo. *Sanchez v. Ainley*, 234 Ariz. 250, 252 ¶ 6 (2014).

**¶9** Arizona statutorily authorizes PCR proceedings. *See* A.R.S. §§ 13-4231 through -4240. Rule 32 of our criminal procedure rules "outline[s] the process by which a convicted defendant may obtain post-conviction relief." *Canion v. Cole*, 210 Ariz. 598, 599 ¶ 5 (2005). A PCR proceeding "is a part of the original criminal action and not a separate action." A.R.S. § 13-4233; *see also* Ariz. R. Crim. P. 32.3 (same). In capital cases, once a mandate affirming the defendant's conviction and death sentence has issued, this Court automatically files a PCR notice with the trial court and appoints defense counsel for the PCR proceedings. A.R.S. § 13-4234(D); *see also* Ariz. R. Crim. P. 32.4(a), (c)(1).

**¶10** Section 13-4041 addresses the appointment of counsel. Subsection (B) provides: "After the supreme court has affirmed a defendant's conviction and sentence in a capital case, the supreme court or, if authorized by the supreme court, the presiding judge of the county from which the case originated shall appoint counsel to represent the capital defendant in the state postconviction relief proceeding." A.R.S. § 13-4041(B); *see also* Ariz. R. Crim. P. 32.4(c)(1). To be eligible for appointment, an attorney must meet the qualifications prescribed in Arizona Rule of Criminal Procedure 6.8(a) and (c) and "shall be familiar with and guided by the performance standards in the 2003 American Bar Association Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases ("ABA Guidelines")." Ariz. R. Crim. P. 6.8(c)(4).

**¶11** Under the ABA Guidelines, Fitzgerald argues, capital PCR counsel "are required to investigate and consider any and all claims potentially available to a petitioner." *See* ABA Guidelines 10.5 ("Relationship with the Client"); 10.7 ("Investigation"); 10.8 ("The Duty to Assert Legal Claims"); 10.15.1 ("Duties of Post-Conviction Counsel"). Specifically, Fitzgerald points to the ABA Guidelines' statements that capital case PCR counsel "should fully discharge the ongoing obligations imposed by the[] Guidelines, including the obligations to: maintain close contact with the client regarding litigation developments"; "continually monitor the client's mental, physical and emotional condition for effects on the client's legal position"; and "continue an aggressive investigation of all aspects of the case." ABA Guidelines 10.15.1(E)(1), (2), (4).

**¶12** Citing Rule 6.8(c)(4) and the ABA Guidelines, Fitzgerald contends that the statutory right to appointed counsel under § 13-4041(B) would be meaningless if counsel could not effectively communicate with his client because of the client's incompetency,

---

And despite its label, Fitzgerald's post-argument filing does not qualify as a permissible supplemental citation of legal authority. *See* Ariz. R. Crim. P. 31.22. Therefore, we do not consider Fitzgerald's new constitutional argument.

and that counsel could not comply with the ABA Guidelines if the client is incompetent. If counsel is unable to follow the ABA Guidelines because of the client's current mental condition, Fitzgerald argues, "it effectively denies [Fitzgerald's] statutory right to have effective and competent communication with his counsel during these proceedings." According to Fitzgerald, a competent petitioner is needed "to assist counsel in the development and preservation of constitutional claims for relief" under Rule 32, particularly claims of ineffective assistance of trial counsel ("IAC") that a defendant may first assert only in a PCR proceeding. *See State v. Spreitz*, 202 Ariz. 1, 3 ¶ 9 (2002) (requiring IAC claims to be brought in Rule 32 proceedings).

¶13        Section 13-4041(B), by its terms, does not support Fitzgerald's argument. That statute does not mention, let alone require, competence, nor does it provide any right to effective communication between Rule 32 counsel and the client. In contrast, the legislature in other contexts has expressly provided for a right to competency. *See* A.R.S. § 13-4502(A) (stating that "[a] person shall not be tried, convicted, sentenced or punished for an offense if the court determines that the person is incompetent to stand trial"); A.R.S. § 8-291.01(A) (stating that "[a] juvenile shall not participate in a delinquency, incorrigibility or criminal proceeding if the court determines that the juvenile is incompetent to proceed"). But in those statutes, unlike § 13-4041, the legislature confirmed the accused person's right to competency *before* trial or sentencing, as due process requires. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 161 (1990) (a defendant has a due process "right not to be tried or convicted while incompetent") (quoting *Drope v. Missouri*, 420 U.S. 162, 172 (1975)). If the legislature had intended to extend that right to a convicted defendant in PCR proceedings, it presumably would have done so. Courts generally cannot "enlarge, stretch, expand, or extend a statute to matters not falling within its express provisions," and we decline to do so here. *State ex rel. Morrison v. Anway*, 87 Ariz. 206, 209 (1960).

¶14        Significantly, in the PCR statutory scheme itself, the legislature has specified circumstances when competency is required. As noted above, under A.R.S. § 13-4234(D), once this Court on direct appeal affirms a defendant's capital conviction and death sentence, we are required to expeditiously file a PCR notice with the trial court and appoint counsel pursuant to § 13-4041(B). Although all such defendants, if indigent, are entitled to appointed counsel to represent them in state PCR proceedings, "[a] competent indigent defendant may reject the offer of counsel with an understanding of its legal consequence." § 13-4234(D). Thus, the legislature has expressly required a capital defendant's competence before he may validly waive PCR counsel. Because the legislature imposed no such competency requirement (for capital or non-capital cases) elsewhere in the PCR statutory scheme, A.R.S. §§ 13-4231 through -4240, we disagree with Judge Vásquez's position that "there is a statutory right [to competency in PCR proceedings] that is implicit given the overall statutory scheme." *Infra* ¶ 36 (Vásquez, J.,

concurring in the result).

¶15     Contrary to Fitzgerald's unsupported assertion, the ABA Guidelines do not establish a statutory right to competency in Rule 32 PCR proceedings. The requirement in our procedural rules that capital case PCR counsel "be familiar with and guided by" the ABA Guidelines does not, and cannot, create a substantive statutory right to, or requirement for, competency in this context. Ariz. R. Crim. P. 6.8(c)(4). Subject to constitutional constraints, the power to enact substantive laws relating to criminal proceedings lies in the legislature, not this Court. *Cf. Seisinger v. Siebel*, 220 Ariz. 85, 92 ¶ 26 (2009) (regarding substantive law, "[t]he legislature has plenary power to deal with any topic unless otherwise restrained by the Constitution"); *State v. Miranda*, 200 Ariz. 67, 69 ¶ 5 (2001) ("Defining crimes and fixing punishments are functions of the legislature."). In addition, the ABA Guidelines are merely "guidelines and not requirements." *State v. Hausner*, 230 Ariz. 60, 86 ¶ 125 (2012); *see also Strickland v. Washington*, 466 U.S. 668, 688 (1984) (stating that the ABA Guidelines are "only guides"). And "[a] deviation from the [G]uidelines . . . is not per se ineffective assistance of counsel." *State v. Kiles*, 222 Ariz. 25, 35 ¶ 45 n.13 (2009) (quoting Ariz. R. Crim. P. 6.8, 2006 cmt.). Rather, the standard for evaluating counsel's performance is that set forth in *Strickland*. *Id.*

¶16     To the extent Fitzgerald urges a Rule 32 competency requirement or right based on the right to counsel under § 13-4041(B), we find *Ryan v. Gonzales*, 568 U.S. 57 (2013) instructive. There, the United States Supreme Court refused to read such a right into a similar federal statute that provides a statutory right to counsel for capital petitioners in federal habeas corpus actions. In *Gonzales*, the Court observed that it "[has] never said that the right to competence *derives from* the right to counsel," and specifically held that 18 U.S.C. § 3599(a)(2), which guarantees capital federal habeas petitioners the right to counsel, "does not provide [them] with a 'statutory right' to competence." 568 U.S. at 66, 71. The Court reasoned that, "[g]iven the backward-looking, record-based nature of most federal habeas proceedings, counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." *Id.* at 68.

¶17     Fitzgerald contends that *Gonzales* is distinguishable because federal habeas proceedings are materially different from, and more limited than, Rule 32 proceedings. We recognize that Rule 32 proceedings often involve IAC or other claims that are not strictly "record-based" and that depend on, or might be aided by, the petitioner's competent input. *Id.* Despite those differences, we conclude that the right to PCR counsel under § 13-4041(B) does not also create or include "a 'statutory right' to competence." *Id.* at 71; *see also Jones v. State*, 479 N.W.2d 265, 271 (Iowa 1991) (concluding that state's competency statute "is not applicable to postconviction relief proceedings"); *Reid v. State*, 197 S.W.3d 694, 700 (Tenn. 2006) (declining to read into a statute providing for appointment of PCR counsel "a statutory right to competency from this right to

counsel"); *cf. Pennsylvania v. Finley*, 481 U.S. 551, 555–57 (1987) (noting that "[s]tates have no obligation to provide" for PCR proceedings, stating that the Court has never held that convicted defendants have a due process or other "constitutional right to counsel when mounting collateral attacks upon their convictions," and rejecting the argument that procedures under *Anders v. California*, 386 U.S. 738 (1987), "should be applied to a state-created right to counsel on postconviction review").

**¶18** Our conclusion also finds analogous support in *State v. White*, a capital case in which this Court held that a defendant's incompetence during the appellate process does not violate due process and that "an appeal should proceed regardless of a defendant's competency." 168 Ariz. 500, 509 (1991) (internal quotation marks and citation omitted), *abrogated on other grounds by State v. Salazar*, 173 Ariz. 399 (1992). In *White*, the defendant argued that he was denied due process because this Court "refused to order a mental examination after a *prima facie* showing of incompetency to assist in the appeal." *Id.* In rejecting that argument, we reasoned that convicted defendants generally do not participate in the appeal and therefore mental incompetence does not affect the accuracy or fairness of decisions. *Id.* And we made that observation even though at that time a defendant could raise IAC claims on direct appeal, rather than waiting, as defendants now must do, to first raise any IAC claim in a Rule 32 PCR proceeding. *See Spreitz*, 202 Ariz. at 3 ¶ 9; *cf. State v. Valdez*, 160 Ariz. 9, 14 (1989) (rejecting defendant's IAC claim on direct appeal). Thus, we are not persuaded by Judge Vásquez's suggestion that the procedural change announced in *Spreitz* regarding IAC claims somehow implies a statutory or rule-based right to competency in PCR proceedings. *Infra* ¶¶ 32, 36, 41.

**¶19** We also noted in *White* that "[s]uspending the appeal would preclude this court from considering even the most clearly reversible or prejudicial error until the defendant regained competency." 168 Ariz. at 509. Just as suspending a capital appeal until the defendant is found competent could prejudice the defendant by delaying adjudication of potentially just claims, so too could indefinite suspension of a capital case PCR proceeding (for resolution of any competency issues) unduly delay relief for a deserving petitioner. As the State acknowledged at oral argument, any alleged prejudice caused by the petitioner's incompetency may be addressed in a successive PCR petition. *See* Ariz. R. Crim. P. 32.2(a)(3) (precluding relief on any ground that was "waived" in any previous PCR proceeding); 32.2(b) (setting forth exceptions to preclusion provisions in Rule 32.2(a), including claims for relief based on newly discovered material facts under Rule 32.1(e)).

**¶20** Direct appeals, of course, differ from PCR proceedings in that the latter sometimes involve factual investigation that might require or be aided by the defendant's input. In that regard, the State acknowledges that *White* "addresse[d] post-sentencing competency *during the appellate process*, which is record-based," that "Rule 32 [PCR]

proceedings specifically provide for claims outside the record to be raised," and that *White* "recognized that prejudice flowing from the incompetency could be addressed in a post-conviction proceeding." *See White*, 168 Ariz. at 509 (citing ABA Criminal Justice Mental Health Standards (1989), Standard 7-5.4(c)). Nonetheless, we find *White* analogous and its reasoning and conclusion persuasive, albeit in this different context. Just as no statute requires a convicted capital defendant's competence before his appeal may proceed, § 13-4041(B) does not require competence before a capital petitioner's PCR proceeding may advance.

¶21 Fitzgerald's argument fares no better when we consider its second basis, Rule 32.5. That rule provides in part: "The [PCR] petition shall be accompanied by a declaration by the defendant stating under penalty of perjury that the information contained is true to the best of the defendant's knowledge and belief." Ariz. R. Crim. P. 32.5. Fitzgerald argues that because of his incompetency, he is "incapable of signing anything under the penalty of perjury" and thus "cannot attest to the contents in the petition." Based on that premise, he asserts that this Court "must have intended that all petitioners in capital post[-]conviction cases be competent." We disagree.

¶22 Rule 32.5 — like § 13-4041(B) — does not mention, let alone require, a defendant's competence as a prerequisite in capital case PCR proceedings. In contrast, Rule 11 (though imposing no competency requirement for Rule 32 proceedings) expressly prohibits an incompetent defendant from being "tried, convicted, sentenced or punished for a public offense." Ariz. R. Crim. P. 11.1. If this Court had intended to impose that same prohibition on capital case PCR proceedings, we would have done so expressly rather than impliedly conditioning such proceedings on the petitioner's competency.

¶23 In addition, as the State argues, "to the extent a defendant does not have the capacity to sign the [Rule 32.5] declaration, his attorney—acting as next friend—can sign for his client, thus allowing the [PCR] petition to go forward." *Cf. Whitmore v. Arkansas*, 495 U.S. 149, 162–63 (1990) (discussing counsel acting on behalf of defendant who lacks the capacity to act on his own); *Carter v. State*, 706 So. 2d 873, 876 (Fla. 1997) (stating that "[c]ollateral counsel will be in a position to adequately represent the inmate's best interest, to determine which claims must be raised, and to make all decisions necessary to the proceedings," and allowing counsel to file a motion and certificate to satisfy the requirement that defendant sign an oath that accompanies the post-conviction petition). Contrary to Fitzgerald's contention, Rule 32.5 does not require that a convicted capital defendant be found competent before his PCR proceedings may move forward, nor does the rule require the PCR court to stay such proceedings unless or until the petitioner's competence is established.

¶24 We hold that neither § 13-4041(B) nor Rule 32.5 provides a right to, or

requires, a convicted defendant's competency in capital case PCR proceedings. Thus, the superior court did not err in concluding that Fitzgerald "does not have a right to a competency determination at this point in a [PCR] proceeding."

## III.

¶25 Having disposed of the specific issues raised by Fitzgerald, we add some important caveats. Depending on the nature, scope, and substance of a PCR claim, and considering all the circumstances of a case, situations may arise in which a capital defendant's input and participation regarding a particular Rule 32 claim are needed and perhaps imperative. In such situations, as the State conceded at oral argument, the superior court has inherent authority and discretion to stay the PCR proceeding to determine whether the petitioner is incompetent and, if so, can be restored to competency relatively quickly. *Cf.* Ariz. R. Crim. P. 11.2(a) (permitting trial court on its own motion to order competency or other mental examination of defendant); 26.5 (permitting court to order mental examination of defendant before sentencing). But any stay that is ordered should be limited in duration and scope (for example, allowing purely record-based claims to proceed in the interim) so as to protect the rights of the state and victims to finality as well as the petitioner's right to a prompt ruling on legal and strictly record-based claims. *See Gonzales*, 568 U.S. at 76–77 (stating that when a petitioner's restoration to competency cannot be achieved "in the foreseeable future" or "there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment"); Ariz. Const. art. II, § 2.1(A)(10) ("To preserve and protect victims' rights to justice and due process, a victim of crime has a right . . . [t]o a . . . prompt and final conclusion of the case *after the conviction and sentence*.") (emphasis added); *State v. Towery*, 204 Ariz. 386, 391 ¶ 14 (2003) (recognizing victims' right to finality); *State v. Mata*, 185 Ariz. 319, 337 (1996) (same); *cf. State v. Carriger*, 143 Ariz. 142, 145 (1984) (noting in capital case that Rule 32 PCR proceedings are "not designed to afford a second appeal" and that "there must be an end to litigation").

¶26 If a court deems a PCR-related competency evaluation appropriate, ordinarily it should order that evaluation as soon as practicable, even if the court does not stay the proceedings. At the least, a competency determination would then serve as a "marker" (i.e., the petitioner either was or was not competent at that point in time) for any successive PCR petition that asserts that a new claim could not have been raised at the initial PCR proceeding due to the petitioner's incompetence. *See State v. Debra A.E.*, 523 N.W.2d 727, 735 (Wis. 1994) (stating that "a ruling on competency during postconviction relief proceedings enables a [trial] court to consider a defendant's assertion at a later proceeding . . . that the defendant did not raise an issue at an earlier proceeding because he or she was incompetent," and noting the inherent difficulty in retrospectively determining a petitioner's competence). We do not address here,

however, whether due process may require the court to consider the merits of such a successive petition if the petitioner was incompetent at the time of the initial, earlier Rule 32 proceedings.

¶27        We emphasize the limited nature of our holding in this case — neither the statute nor the rule on which Fitzgerald's argument is solely based, § 13-4041(B) and Rule 32.5, establishes a requirement for, or right to, a convicted defendant's competency in capital PCR proceedings.  In the sound exercise of its inherent authority and discretion, however, a trial court may order a competency evaluation when helpful or necessary in a capital case PCR proceeding.  Doing so may be the most prudent course of action depending on all the circumstances, including whatever evidence exists regarding the petitioner's mental state, the nature and complexity of the proffered PCR claims, and the importance of or need for the petitioner's direct input on those claims.  *See, e.g.*, *Carter*, 706 So. 2d at 875 (stating that a "trial court must hold a competency hearing in a postconviction proceeding only after a capital defendant shows there are specific factual matters at issue that require the defendant to competently consult with counsel"); *Debra A.E.*, 523 N.W.2d at 729 (concluding that a trial court "should determine a defendant's competency when it has reason to believe that the defendant is unable, in the [PCR] proceedings . . . to assist counsel or to make decisions committed by law to the defendant with a reasonable degree of rational understanding").

¶28        Consideration of such factors might warrant a competency evaluation, particularly in the initial capital case PCR proceeding, and thereby alleviate the due process concerns that some courts have recognized.  *See, e.g.*, *Reid*, 197 S.W.3d at 700 (stating that although "there is no constitutional or statutory right to competency," "[d]ue process concerns may nevertheless be implicated in the post-conviction context where a potential litigant is denied an opportunity for the presentation of claims at a meaningful time and in a meaningful manner"); *Debra A.E.*, 523 N.W.2d at 733 (alluding to due process rights in prescribing procedures when competency issues arise in PCR proceedings).  We have utmost confidence in our trial courts discerning when competency evaluations and determinations are called for in PCR proceedings, and unlike Judge Vásquez, *infra* ¶¶ 32, 34, do not believe they will be hampered or confused in doing so.  And, depending on the totality of circumstances, a PCR court's decision to order a competency evaluation will address Judge Vásquez's (and our) concern for a "meaningful resolution of all claims in a capital defendant's first post-conviction proceeding." *Infra* ¶ 40.  We leave for another day, however, whether due process may require in a particular capital case (or a non-capital case) a competency evaluation and determination with respect to certain proffered PCR claims.  Nor do we decide here what the applicable standards should be for evaluating a PCR petitioner's request for a

competency determination or for that determination itself.[3]

**¶29**        On this record, the superior court did not abuse its discretion in declining to exercise its inherent authority by ordering a competency evaluation. In its ruling, the court noted that Fitzgerald "claims that he is unable to assist counsel, but provides no indication of the assistance that he is unable to provide at this stage of the proceedings" or that his assistance at this point "is essential." The court further observed that Fitzgerald "is represented by competent and experienced counsel who is capable of reviewing the record, conducting an investigation, and identifying potential claims to be raised in a [PCR] petition." In view of those findings, the superior court did not err in concluding that Fitzgerald "has not established that his assistance is required" at this stage of the PCR proceedings, and ruling that "an indefinite stay to resolve competency . . . would be detrimental to the State, [Fitzgerald,] and any victims."

**IV.**

**¶30**        For the reasons stated above, we affirm the superior court's order denying Fitzgerald's motion to determine competency and to stay the PCR proceedings pending such a determination.

---

[3] Although Judge Vásquez urges us to identify "the precise standard by which to gauge the [PCR] court's exercise of its discretion," *infra* ¶ 35, we decline to do so absent a more complete record and briefing on that point. And despite his assertion that "capital defendants have a right to competency in post-conviction proceedings for certain claims," *infra* ¶ 48, Judge Vásquez does not indicate what standards should apply to determine which PCR claims are "dependent upon the petitioner's ability to effectively communicate with counsel." *Infra* ¶ 40. To the extent he suggests that all IAC claims fall in that category, we disagree, inasmuch as such claims often are based on trial counsel's alleged legal errors, unsupported or inexplicable decisions having no arguable strategic basis, or the like. Such IAC claims neither depend on, nor would necessarily benefit from, competent input from the petitioner, but rather can be pursued based on the record, the law, and perhaps supporting opinions of outside counsel.

JUDGE VÁSQUEZ, concurring in the result:

¶31        Today the court holds that a Rule 32 petitioner is not entitled to competency in a post-conviction relief (PCR) proceeding based on A.R.S. § 13-4041(B) and Rule 32.5, Ariz. R. Crim. P., because neither expressly requires it. But the court further holds that a trial court, "in its discretion, may order a competency evaluation if it is helpful or necessary for a defendant's presentation of, or the court's ruling on, certain Rule 32 claims and, if so, the court should order the evaluation as soon as practicable even if the PCR proceeding is not stayed." *Supra* ¶ 1. I concur with that portion of the opinion affirming the trial court's denial of Fitzgerald's request to stay the Rule 32 proceedings to conduct a competency evaluation. I agree that there is no need to stay the proceedings for such an evaluation when there are claims, apparent from the record, that could be decided without delay. Because Fitzgerald's record-based claims, which do not require his participation and input, could be addressed despite his alleged incompetency, I do not believe the trial court erred by denying his request for a stay.

¶32        I disagree, however, that petitioners are not entitled to competency in Rule 32 proceedings for certain claims. In *State v. Spreitz*, this court held that "ineffective assistance of counsel claims are to be brought in Rule 32 proceedings" and that "[a]ny such claims improvidently raised in a direct appeal, henceforth, will not be addressed by appellate courts regardless of merit." 202 Ariz. 1, 3 ¶ 9 (2002). The majority's decision in this case undermines this precept. At a minimum, it will cause confusion and problems for attorneys and judges in recognizing, raising, and resolving certain claims, such as ineffective assistance of counsel (IAC) and other claims, that do not appear from the record and that can only be brought to light by a petitioner who is competent and, thus, capable of effectively communicating with counsel. It also creates the real potential that those claims will be lost altogether for those defendants who are incompetent and never restored to competency. Although I disagree with the majority's reasoning, I cannot say the trial court abused its discretion in finding that "at this stage of the current proceedings [Fitzgerald's] competence is not necessary to assist PCR counsel or the Court" and that Fitzgerald "does not have a right to a competency determination at this point in a post-conviction proceeding." The trial court implicitly recognized that competency could become a factor and thus be raised in the current or successive proceedings.

¶33        The majority's first holding, that neither the statute nor the rule requires a trial court to determine whether a Rule 32 petitioner is competent is based on its conclusion that there is no right to competency in post-conviction proceedings. That conclusion undermines its second holding, that a trial court nonetheless "may" in its discretion order a competency evaluation "if it is helpful or necessary" in presenting or ruling on a Rule 32 claim. *See supra* ¶¶ 1, 25–26. The plain language construction of the first holding renders the second holding problematic for trial courts to apply, and

potentially meaningless. A trial court may be disinclined to order a competency evaluation for a petitioner who does not have a right to competency in the first place.

¶34        The majority essentially has identified two circumstances in which a petitioner's competency may be addressed. The first, "if helpful or necessary . . . [in] ruling on . . . certain Rule 32 claims," focuses on whether a competency determination would aid the trial court. *Supra* ¶ 1. Like the majority, I have "utmost confidence" in trial judges, *supra* ¶ 28, but this standard appears to me to be somewhat broad and nebulous. If counsel is unable to identify and raise a claim because of the petitioner's incompetence, and neither the rule nor the statute requires competency in Rule 32 proceedings, under what circumstances and for what kinds of claims would the trial court be expected to find the petitioner's competency helpful or necessary to ruling on those claims?

¶35        The second circumstance focuses on whether an evaluation of competency would be "helpful or necessary for a defendant's presentation of . . . certain Rule 32 claims." *Supra* ¶ 1. In my view, this is where the focus should be. But the majority should acknowledge the petitioner's limited right to competency and, if not arising from statute or rule, clearly state the basis for the right so that trial courts and litigants will know the precise standard by which to gauge the court's exercise of its discretion. Even in situations where an evaluation is "helpful or necessary," the court instructs trial courts that they "may," not "shall," order one. *Supra* ¶ 1. The majority declines to articulate a more precise standard without a more complete record or further briefing on the issue. *Supra* ¶ 28 n.3. Although I appreciate both would be helpful, the majority has created a process not only for this case but also for other, similar cases in the future. My concern is that it will be unclear to Rule 32 counsel what they must show in order to demonstrate that the petitioner's assistance is helpful or necessary.

¶36        As the majority points out, Fitzgerald relies on § 13-4041(B) and Rule 32.5 to support his argument,[4] *see supra* ¶ 8, and neither the statute nor the rule expressly provides that capital defendants are entitled to be competent in post-conviction proceedings. Nonetheless, I believe there is a statutory right that is implicit given the overall statutory scheme and related rules, including this Court's pronouncement that IAC claims can only be raised in Rule 32 proceedings.

---

[4]  Although I do believe there is a constitutional due process right to competency for certain non-record based claims, *see Pennsylvania v. Finley,* 481 U.S. 551, 558 (1987) (noting that if a state creates a post-conviction review process it must comport with due process), Fitzgerald failed to raise any timely constitutional due process challenge. Like the majority, I therefore do not base the right to competency in Rule 32 proceedings on that ground.

¶37        This Court's two opinions in *Spreitz* support my view.  In his direct appeal to this Court, Spreitz asserted one claim of ineffective assistance of counsel.  *State v. Spreitz*, 190 Ariz. 129, 146 (1997).  This Court noted it had stated previously that it would not "'resolve an ineffective assistance of counsel claim on direct appeal unless the record clearly indicates that the claim is meritless.'"  *Id.* (quoting *State v. Maturana*, 180 Ariz. 126, 133 (1994)).  In addressing the claim, this Court found it "entirely without merit and decide[d] the issue against [Spreitz]."  *Id.*  After his convictions were upheld, Spreitz petitioned for post-conviction relief under Rule 32.  *Spreitz*, 202 Ariz. at 1 ¶ 3.  He asserted several additional claims of ineffective assistance of counsel.  *Id.*  But "[b]ecause the single claim was raised and addressed in the direct appeal, the trial court held that Spreitz had waived any further claims of ineffective assistance of trial counsel under Rule 32.2(a)(3)."  202 Ariz. at 1–2 ¶ 3.  That rule expressly provides that "[a] defendant shall be precluded from relief under this rule based upon any ground . . . [t]hat has been waived . . . on appeal."  Ariz. R. Crim. P. 32.2(a)(3).

¶38        However, on review of the trial court's decision, despite the express language of Rule 32.2(a)(3), this Court nevertheless held "[t]here will be no preclusive effect under Rule 32 by the mere raising of such issues [on direct appeal].  The appellate court simply will not address them."  *Spreitz*, 202 Ariz. at 3 ¶ 9.  Notably, there also was no statute or rule that expressly supported the court's holding "that ineffective assistance of counsel claims are to be brought in Rule 32 proceedings" and will not be considered on direct appeal "regardless of merit."  *Id.*  Indeed, this Court's holding was grounded not on the express language of any statute or rule but, quite simply, on its "determin[ation] to stop delaying . . . direct appeal[s] for the resolution of Rule 32 proceedings in the trial court below when that procedure became unworkable."  202 Ariz. at 2 ¶ 6.  According to this Court, the holding had the practical effect of "ensur[ing] criminal defendants a timely and orderly opportunity to litigate ineffectiveness claims" and of "promot[ing] judicial economy by disallowing piecemeal litigation."  202 Ariz. at 3 ¶ 9.  In addition, as I point out below, even before *Spreitz*, this Court had acknowledged that IAC claims often require further development of the record, making post-conviction proceedings a superior procedural vehicle for raising such claims.  *See State v. Carver*, 160 Ariz. 167, 175 (1989); *State v. Valdez*, 160 Ariz. 9, 14–15 (1989), *departed from on other grounds by Krone v. Hotham*, 181 Ariz. 364 (1995).

¶39        Our case law provides numerous other examples of courts finding implicit meaning in a statute or rule given the overall structure.  *See State v. Sang Le*, 221 Ariz. 580, 581 ¶ 5 (App. 2009) (although plain language of rule appears to allow IAC claims to be brought in post-trial motion to vacate judgment, defendants cannot do so "in the interest of procedural regularity," given that this Court designated Rule 32 as vehicle for raising such claims); *State v. Rosales*, 205 Ariz. 86, 89–90 ¶ 11 (App. 2003) ("for practical and policy

reasons," petitioner did not waive other claims under Rule 32.1 when first petition was limited to requesting delayed appeal under subsection (f)); *State v. 1810 E. Second Ave.*, 193 Ariz. 1, 4 (App. 1997) ("Although [A.R.S. §] 13-4311 does not explicitly require seizure for forfeiture, the requirement is unquestionably a part of the statute."). "What is necessarily implied in a statute [or rule] is as much a part of it as what is expressed." *Maricopa Cty. v. Douglas*, 69 Ariz. 35, 39 (1949). "We interpret statutes and rules in accordance with the intent of the drafters . . . ." *Fragoso v. Fell*, 210 Ariz. 427, 430 ¶ 7 (App. 2005). In doing so, "we apply practical, common sense constructions, not hyper-technical ones that would tend to frustrate [the drafters'] intent." *State v. Wood*, 198 Ariz. 275, 277 ¶ 7 (App. 2000). When the language is clear and unambiguous, we need look no further to ascertain the drafters' intent and apply the language as written. *State v. Peek*, 219 Ariz. 182, 184 ¶ 11 (2008). However, we must construe related statutes and rules in conjunction with each other and harmonize them whenever possible. *Fragoso*, 210 Ariz. at 430 ¶ 7; *see also Wood*, 198 Ariz. at 277 ¶ 7.

**¶40** Based on the statutory scheme and the related rules of procedure, capital defendants have a right to competency for non-record based claims in Rule 32 proceedings when raising those claims is dependent upon the petitioner's ability to effectively communicate with counsel.[5] First, an automatic appeal to the supreme court occurs in all capital cases for which a sentence of death has been imposed. *See* A.R.S. § 13-4031; *see also* Ariz. R. Crim. P. 26.15, 31.2(b). Second, upon issuance of the mandate in the direct appeal, the clerk of the supreme court automatically files a notice for post-conviction relief with the trial court. Ariz. R. Crim. P. 32.4(a). Third, the supreme court—or the presiding judge from the county in which the defendant was convicted—automatically appoints counsel to represent the defendant in that Rule 32 proceeding. § 13-4041(B). Fourth, attorneys appointed in those cases must meet specific requirements, including having practiced in the area for at least three years prior and no earlier representation of the defendant at trial or on appeal, unless the defendant and counsel both waive all potential issues. § 13-4041(C). Thus, our legislature—as well as this Court, *see* Ariz. Const. art. VI, § 5; *see also State v. Hansen*, 215 Ariz. 287, 289 ¶ 9 (2007)—has clearly recognized the importance of a meaningful resolution of all claims in a capital defendant's first post-conviction proceeding.

**¶41** By requiring petitioners to assert all ineffective assistance claims in Rule 32 proceedings, *Spreitz*, 202 Ariz. at 3 ¶ 9, this Court undoubtedly intended that all, not just

---

[5] My conclusion is limited to capital defendants because that is where many of these statutes and rules apply. I express no opinion as to whether constitutional protections could provide both capital and non-capital defendants with a right to competency in Rule 32 proceedings.

some, would receive meaningful review.  I recognize that certain IAC claims are apparent from the record and do not depend on a petitioner's ability to effectively communicate with counsel.  But in many instances, such claims will be non-record based, meaning Rule 32 counsel will only learn of a prior attorney's mistake through communication with the petitioner.  Thus, a petitioner's ability to communicate the existence of non-record based claims to counsel is of paramount importance for meaningful Rule 32 review and, consequently, a petitioner's competency is crucial in post-conviction proceedings.  *See* Ariz. R. Crim. P. 32.1(a); *see also State v. Herrera*, 183 Ariz. 642, 645–46 (App. 1995) (allegation of IAC falls under 32.1(a)).  My confidence in trial courts' proper exercise of discretion includes the ability to distinguish colorable claims that can only be identified and, thus, raised after a petitioner's competency has been restored.

**¶42**        By holding that capital defendants have no statutory or rule-based right to competency in Rule 32 proceedings, the majority severely impairs a petitioner's ability to assert any IAC or other claims that do not appear in the record.  *See Martinez v. Ryan*, 566 U.S. 1, 12 (2012) ("A prisoner's inability to present a claim of trial error is of particular concern when the claim is one of ineffective assistance of counsel.").  The right to assert those types of claims is meaningless for incompetent petitioners unless they somehow are eventually restored to competency.[6]  *Cf. Osterkamp v. Browning*, 226 Ariz. 485, 490–91 ¶ 20 (App. 2011) ("The right to the effective assistance of counsel in the first Rule 32 proceeding is meaningless unless the pleading, indigent defendant is afforded counsel in the second proceeding.").  And even if such petitioners somehow are restored to competency, they may have a difficult task of showing their claims are not precluded.  A practical, common-sense interpretation of the relevant statutes and rules dictates otherwise.  *See Fragoso*, 210 Ariz. at 430 ¶ 7; *see also Wood*, 198 Ariz. at 277 ¶ 7.

---

[6]  I recognize that capital defendants cannot "be executed as long as [they are] mentally incompetent to be executed," A.R.S. § 13-4021(A), which suggests that those individuals should be restored to competency and be able to raise non-record based claims in a Rule 32 proceeding eventually.  However, the case law interpreting § 13-4021(A) seems to use "insane" interchangeably with "incompetent."  *See State v. Grell*, 212 Ariz. 516, 531 ¶ 74 (2006) (Bales, J., concurring in part and dissenting in part).  Consequently, I question whether competency in this context is the same as it is in that context.  Notably, in the death penalty context, the burden of proof is on the defendant to prove his incompetency to be executed by clear and convincing evidence.  A.R.S. § 13-4022(F); *see also Grell*, 212 Ariz. at 525 ¶ 40; *cf. State v. Lewis*, 236 Ariz. 336, 342 ¶ 15 n.5 (App. 2014) (assuming without deciding that state bears burden of proof once trial court orders competency determination under Rule 11, Ariz. R. Crim. P.).

**¶43** Moreover, because IAC claims often are non-record based, I find *Ryan v. Gonzales*, 568 U.S. 57 (2013), and *State v. White*, 168 Ariz. 500 (1991), *abrogated on other grounds by State v. Salazar*, 173 Ariz. 399 (1992), distinguishable. *See supra* ¶¶ 16–18. In *Gonzales*, the Supreme Court determined that federal habeas petitioners on death row did not have a right to competency during federal habeas proceedings. 568 U.S. at 65–66, 71. However, the Court also pointed out that federal habeas proceedings are generally "backward-looking" and "record-based," such that "counsel can generally provide effective representation to a habeas petitioner regardless of the petitioner's competence." *Id.* at 68. Similarly, in *White*, while this Court found that an appeal should proceed regardless of a defendant's competency, it explained that criminal defendants generally do not participate in record-based appellate proceedings. 168 Ariz. at 509. Neither *Gonzales* nor *White* dealt with non-record based claims, including certain IAC claims, that necessarily require the defendant to effectively communicate with Rule 32 counsel.

**¶44** The majority insists *White* is analogous, notwithstanding the fact that it was a direct appeal, noting that this Court had made its observation in that case at a time when "a defendant could raise IAC claims on direct appeal," before *Spreitz* mandated that IAC claims be raised in a Rule 32 proceeding. *Supra* ¶ 18. But in its 1989 decisions in *Valdez*, 160 Ariz. at 14–15, and *Carver*, 160 Ariz. at 175, decided before *White*, this Court repeatedly discouraged defendants from raising IAC claims on direct appeal. In fact, in *Carver*, this Court made clear it would not consider an IAC claim raised for the first time on appeal unless the record clearly showed the claim was meritless. 160 Ariz. at 175; *see also State v. Brewer*, 170 Ariz. 486, 499 (1992) (citing *Carver* and *Valdez* and addressing IAC claim on appeal only because "the record clearly demonstrate[d] that the claim [was] meritless"). Although *Spreitz* created a bright-line rule, this Court had already acknowledged IAC claims are best brought in post-conviction proceedings precisely because a more expansive record than the appellate record is often needed to identify and develop such claims. I therefore respectfully disagree with the majority that the observation in *White* that a defendant need not be competent to assist appellate counsel impliedly applies to IAC claims simply because such claims were among the claims an appellate lawyer could raise on appeal.

**¶45** Nonetheless, I agree with the majority that a petitioner should be required to raise an issue of incompetency in his first Rule 32 proceeding to serve as a "marker" for successive proceedings. *See supra* ¶ 26. Although a trial court should address the competency issue, it should not be required to stay the current proceedings while it does so. It may proceed with a resolution of any record-based claims, as well as any non-record based claims that do not rely on the petitioner's ability to effectively communicate with counsel, and may enter a final order that disposes of the initial Rule 32 petition. The marker, however, would permit the petitioner to file a successive petition

for post-conviction relief as to his non-record based claims that can only be developed and presented after he is restored to competency. *See* Ariz. R. Crim. P. 32.2(a)(3) (defendant precluded from raising any claim that was waived in previous collateral proceeding), 32.4(a) (notice not timely filed may only raise claims pursuant to Rule 32.1(d)-(h)). The court would then determine whether those non-record based claims are colorable, thereby entitling the petitioner to an evidentiary hearing. *See* Ariz. R. Crim. P. 32.6(c), 32.8.

¶46        I am compelled to make two final comments regarding the "marker" procedure described by the majority — with which I agree. First, the "marker" requirement is not set forth in the statute or the rule; nevertheless, the majority finds it a viable method for asserting certain claims, reasoning that the trial court's authority to permit it is derived from its "inherent authority and discretion." *Supra* ¶ 27. It is precisely this kind of reasoning that leads me to conclude with respect to certain non-record based claims, that the statute and the rule contemplate the petitioner's competency. Similarly, the majority suggests that, notwithstanding the unambiguous rules of preclusion in Rule 32.2(a) and 32.4(a), a trial court may permit a petitioner to mark the potential claim in the initial proceeding, and assert and develop it in a successive proceeding. Again, although I agree with this reasoning, Rule 32's express language does not provide for it. As I previously pointed out, Rule 32.2(b) and 32.4(a) only permit a party to raise a claim under Rule 32.1(d), (e), (f), (g), or (h) in an untimely and successive PCR proceeding, not a claim such as IAC, which falls under Rule 32.1(a). The majority's suggestion that a claim may be raised in a successive proceeding if a place for it is held by a "marker" is not based on the plain language of the rule. It is, I believe, based on notions of fairness and a reasonable application of the rules to petitioners who are not competent.

¶47        Second, I continue to be concerned that claims a petitioner must raise in the initial PCR proceeding, particularly IAC claims, will be forever lost because of a defendant's incompetency. Agreeing with the State's comments during oral argument, the majority states, "[A]ny alleged prejudice caused by the petitioner's incompetency may be addressed in a successive PCR petition." *Supra* ¶ 19. The majority has refused to address "whether due process may require the court to consider the merits of such a successive petition if the petitioner was incompetent at the time of the initial, earlier Rule 32 proceedings." *Supra* ¶ 26. To the extent the majority is suggesting that such a claim may be raised as a claim of newly discovered evidence pursuant to Rule 32.1(e), which is excepted from the rules of preclusion, I disagree. An IAC claim and a claim of newly discovered evidence are distinct. I do not believe an IAC claim can be bootstrapped to a claim of newly discovered evidence in order to avoid its preclusion. *See State v. Goldin*, 239 Ariz. 12, 15–16 ¶¶ 14–15 (App. 2015) (concluding plain language of rule and case law interpreting it before *State v. Diaz*, 236 Ariz. 361 (2014), did not permit IAC claim based

on newly discovered evidence to be excepted from preclusive effect of Rule 32.2 and 32.4).

¶48        I believe my position in this case is supported by our legislature's directive: "Penal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice." A.R.S. § 1-211(C). Rule 1.2, Ariz. R. Crim. P., similarly provides that the rules of criminal procedure "are intended to provide for the just, speedy determination of every criminal proceeding. They shall be construed to secure simplicity in procedure, fairness in administration, the elimination of unnecessary delay and expense, and to protect the fundamental rights of the individual while preserving the public welfare." Significantly, this Court relied on Rule 1.2 in *Diaz*, refusing to find the petitioner had waived his IAC claim when, through no fault of the petitioner's, his counsel in two prior PCR proceedings had failed to file petitions. 236 Ariz. 361, 361, 363 ¶¶ 1, 11, 13. I therefore would hold that capital defendants have a right to competency in post-conviction proceedings for certain claims, such as IAC and other claims that do not appear from and cannot be presented with the existing record when those claims require a defendant's ability to effectively communicate with counsel. In my view, this is consistent with our statutes and rules, promotes justice, and causes no unnecessary delay. Accordingly, I respectfully disagree with the majority's reasoning but concur in this Court's opinion.