*Maryland Department of Health v. Jamal Lateef Sheffield*, No. 1046, Sept. Term 2019. Opinion filed on July 29, 2020, by Berger, J.

NOTICE OF APPEAL - TIMING

When a trial court issues an oral ruling that is subsequently memorialized in a written order, a notice of appeal is timely if it has been filed within thirty days of the date upon which the written order was entered on the docket by the clerk.

CRIMINAL LAW - POST CONVICTION PROCEEDING - COMPETENCE - TRANSFER TO PERKINS HOSPITAL

Section 3-104 of the Criminal Procedure Article governing incompetency in criminal cases refers to the competence of a "defendant in a criminal case or violation of probation proceeding."  A post conviction proceeding is not a criminal case and a post conviction petitioner is not a defendant in a criminal case or violation of probation proceeding. Section 3-104 of the Criminal Procedure Article does not provide the statutory authority for a circuit court's grant of a post conviction petitioner's motion to transfer from a correctional facility to a psychiatric hospital operated by the Maryland Department of Health for the purposes of achieving competency.

Assuming *arguendo* that a petitioner in a post conviction proceeding has the right to be found competent, it does not necessarily follow that the trial court has the authority to order the petitioner's transfer to a psychiatric hospital.  The Department of Public Safety and Correctional Services provides health care, including mental health services, to inmates, and, if necessary, prisons may utilize the involuntary admissions provisions set forth in Md. Code (1982, 2019 Repl. Vol.), § 10-614 of the Health-General Article.

Absent statutory authority, the circuit court may not order the transfer of a post conviction petitioner from a correctional institution to a psychiatric hospital operated by MDH for the purpose of achieving competency.

Circuit Court for Prince George's County
Case No. CT-96-1449X

REPORTED

IN THE COURT OF SPECIAL APPEALS

OF MARYLAND

No. 1046

September Term, 2019
_____

MARYLAND DEPARTMENT OF HEALTH

v.

JAMAL LATEEF SHEFFIELD
_____

Berger,
Wells,
Salmon, James P.
    (Senior Judge, Specially Assigned),

JJ.
_____

Opinion by Berger, J.
_____

Filed: July 29, 2020

Pursuant to Maryland Uniform Electronic Legal Materials Act
(§§ 10-1601 et seq. of the State Government Article) this document
is authentic.



Suzanne C. Johnson, Clerk

In 1997, Jamal Lateef Sheffield, appellant, was convicted of second-degree murder, attempted first-degree murder, and two counts of use of a handgun in connection with a felony or crime of violence, for which he received a life sentence.[1]  In 2018, Sheffield, through counsel, filed a Petition for Post Conviction Relief and a Motion to Transfer Sheffield to Clifton T. Perkins Hospital Center ("Perkins"), an inpatient psychiatric facility operated by the Maryland Department of Health ("MDH").  The purpose of the transfer was the restoration of Sheffield's competence in order to assist counsel in his post conviction proceeding.

The trial court granted Sheffield's motion to transfer.  MDH moved to vacate the trial court's order transferring Sheffield, which the trial court denied.  On appeal, MDH presents the following single issue for our consideration:

> Whether the trial court erred and/or abused its discretion by granting the motion to transfer Sheffield from a correctional facility to MDH's psychiatric facility.

For the reasons explained herein, we shall vacate the ruling of the trial court and remand for further proceedings.

---

[1] Sheffield was sentenced to life imprisonment for attempted first-degree murder, thirty years' imprisonment for second-degree murder, and thirty years' imprisonment for each of the two counts of use of a handgun in connection with a felony or crime of violence.  The thirty-year sentence for second-degree murder was ordered to be served consecutively to the sentence for attempted first-degree murder.  One of the two sentences for the handgun offense was to be served consecutively and the other concurrently.  The total sentence was life plus fifty years.

## FACTS AND PROCEEDINGS

Following a jury trial, Sheffield was convicted of second-degree murder and associated offenses on October 10, 1997. A notice of appeal was filed after Sheffield's conviction but was subsequently withdrawn. In 1998, Carol E. Chance, then-Chief of the Collateral Review Division of the Office of the Public Defender ("OPD"), wrote a letter to the Clerk of the Circuit Court for Prince George's County indicating that she had been asked to assist Sheffield in connection with "possible post conviction relief" and asked that the clerk send her the docket entries for Sheffield's case. The OPD did not file for post conviction relief.

On April 13, 2016, Sheffield filed a *pro se* Petition for Post Conviction Relief. The circuit court subsequently referred Sheffield's petition to the Office of the Public Defender on May 18, 2016. In late 2017 or early 2018, Sheffield sent a letter to the circuit court.[2] On May 8, 2018, the trial court sent a letter to the OPD requesting "that you folks investigate this case."

On December 27, 2018, Sheffield filed, through counsel, a Petition for Post Conviction Relief and a motion seeking his transfer from Western Correctional Institute to Perkins.[3] Attached to the motion was a report from psychiatrist Dr. Solomon Meltzer.

---

[2] The circuit court judge observed that the letter was received by the clerk on December 15, 2017 but was not docketed until April 30, 2018. The circuit court observed that the letter "candidly does not make sense and may indicate Mr. Sheffield has some sort of mental health issues."

[3] The OPD assigned the case to panel attorney Lisa J. Sansone, Esq.

Dr. Meltzer diagnosed Sheffield with schizophrenia, noted that Sheffield was not taking any medications at the time of his interview with Melzer, and commented that Sheffield had been "non-compliant with psychiatric medications at various points in his incarceration." Dr. Meltzer expressed that, in his professional opinion, Sheffield was "incompetent to stand trial." Dr. Meltzer recommended that Sheffield be treated at Perkins because it was his "understanding that Clifton T. Perkins Hospital Center provides treatment for incompetent inmates who require adjudication of post conviction matters." MDH, which was not a party to the post conviction action, was not served with a copy of Sheffield's petition or motion to transfer.

The trial court held a hearing on the motion to transfer on June 20, 2019.[4] MDH was not notified of the hearing. The court heard testimony from Dr. Meltzer, who testified that Sheffield was not competent to stand trial and "lack[ed] the ability to participate in post conviction proceedings." At the conclusion of the hearing, the trial court found that it was "appropriate that we send [Sheffield] to Perkins." The trial judge issued an oral ruling granting the motion to transfer. The trial court's grant of the motion to transfer was docketed the same day. The court asked Sheffield's counsel to provide a written order for him to sign. Counsel subsequently provided the court with a written order memorializing the previous oral ruling, and the court signed the written order on June 24, 2019. The June 24, 2019 order required that Sheffield "be transferred from

---

[4] At the hearing, the trial court referred to an "off the record conversation" between the judge, the prosecutor, and counsel for Sheffield that had occurred the previous week.

3

Western Correctional Institution to Clifton T. Perkins Hospital forthwith for treatment." On June 28, 2019, the trial court issued a subsequent order with an additional phrase. Specifically, the June 28th order required that Sheffield be transferred to "Perkins Hospital forthwith for treatment to restore competency for post conviction proceedings." Both the June 24, 2019 order and the June 28, 2019 order were entered by the clerk on July 3, 2019.

On July 2, 2019, the prosecutor contacted the trial court via email and advised the court that he had been contacted by Ms. Jo Anne Dudeck, Manager of Centralized Admissions for MDH, who had advised him that Sheffield was "not being transported" because the circuit court's order "does not have language that the transfer is for a Criminal Procedure Section 315 evaluation."[5] The parties agreed to two additional orders for the circuit court to sign, and the trial court signed both orders on July 5, 2019. The first provided:

> The Court finds that:
>
>> 1) That Mr. Sheffield is incompetent for his post conviction proceedings and,
>>
>> 2) Because of a mental disorder, is a danger to self or the person or property of another,
>
> It is HEREBY ORDERED pursuant to Maryland Criminal Procedures Code, Section 3-106 and case law:

---

[5] Ms. Dudeck is a Licensed Clinical Social Worker, not an attorney. Ms. Dudeck acknowledged in her emails that "it is up to [the attorneys] what order you submit to the court" and "[defense counsel] and the ASA and Judge can decide which order."

> 1) that Mr. Sheffield is committed to Clifton T. Perkins Hospital until the court finds that:
>
> a) the defendant no longer is incompetent for his post conviction proceedings; or
>
> b) There is no reasonable possibility of a restoration to competency.
>
> THEREFORE, the Motion to Transfer is GRANTED, and Mr. Sheffield is to be transferred from Western Correctional Institution to Clifton T. Perkins Hospital forthwith for treatment to restore competency for post conviction proceedings.
>
> It is so ORDERED.

The other order entered by the trial court on July 5th was a form suggested by Ms. Dudeck and was titled "Commitment to the Maryland Department of Health after a Finding of Defendant's Incompetency to Stand Trial and a Finding that by Reason of a Mental Disorder or Mental Retardation the Defendant is a Danger to Self or the Person or Property of Another (Criminal Procedure § 3-106)." This order appears to be the standard form order used by most trial courts when committing an individual to MDH pursuant to Md. Code (2001, 2018 Repl. Vol.), § 3-106 of the Criminal Procedure Article ("CP"). Neither of the orders signed by the circuit court judge on July 5, 2019 were ever docketed.

On July 11, 2019, MDH filed a motion titled Motion to Vacate Orders of June 28, 2019 and July 5, 2019. MDH argued that there was no statutory authority to support the order of a competency determination, evaluation, or commitment in a post conviction proceeding. Sheffield opposed the motion. Before the motion to vacate had been ruled upon by the circuit court, on July 26, 2019, MDH noted an appeal of the four orders

granting the motion to transfer. On August 8, 2019, Sheffield filed a motion to dismiss MDH's appeal.[6] MDH filed a response on August 16, 2019, and we denied the motion to dismiss on September 3, 2019. Sheffield subsequently filed a second motion to dismiss premised upon MDH's delay in filing its brief. We granted MDH's request for an extension of time to file its brief and denied Sheffield's motion.

## DISCUSSION

In this appeal, MDH asserts that the trial court erred by committing Sheffield to MDH because there is no statutory authority to support a commitment under the circumstances presented in this case. As we shall explain, we agree.

First, we address Sheffield's assertion that MDH's July 26, 2019 appeal is untimely. Pursuant to Maryland Rule 8-202(a), a "notice of appeal shall be filed within 30 days after entry of the judgment or order from which the appeal is taken." Sheffield asserts that the trial court orally granted his motion to transfer on June 20, 2019 and that the ruling was reflected in the electronic docket entry on the same day.[7] Sheffield

---

[6] Sheffield raised several arguments in his motion to dismiss, including that this Court lacked jurisdiction to consider the appeal because there was no final judgment below, that the appeal should be dismissed as untimely, and that MDH had no standing to appeal because it was not a party to the proceeding below.

[7] The electronic docket entry provides:

> 625 LA Hearing on Defendant's Motion to Transfer Mr. Sheff[iel]d from WCI to Perkins Judge Green; CS-D2019 Witness/Exhibit list, filed Motion – Granted Defendant to be transferred to Clifton T. Perkins Hospital Order to be submitted by Counsel for Defendant Case is to be reset for

(Continued)

contends that the notice of appeal was due on or before July 20, 2019. We disagree. The Court of Appeals explained in *Byrum v. Horning*, 360 Md. 23, 33 (2000), that "[i]t is the entry of [a] separate document on the docket which constitutes the entry of the judgment . . . and it is the date of that entry which commences the running of the time for noting an appeal." The trial court's written orders dated June 24, 2019 and June 28, 2019 were entered on the docket by the clerk on July 3, 2019. Furthermore, the electronic docket entry cited by Sheffield in support of his assertion that the notice of appeal was untimely specifically provides that an "Order [was] to be submitted by Counsel for Defendant." Because MDH's notice of appeal was filed within thirty days of July 3, 2019, we reject Sheffield's assertion that the notice of appeal was untimely filed.

We, therefore, turn to the merits of MDH's appeal and consider the issue of whether the circuit court had the authority to issue an order transferring Sheffield from Western Correctional Institute to Perkins. Title 3 of the Criminal Procedure Article governs incompetency and criminal responsibility in criminal cases. The trial court's duties regarding competence determinations are outlined in CP § 3-104, which provides:

> (a) If, before or during a trial, the defendant in a criminal case or a violation of probation proceeding appears to the court to be incompetent to stand trial or the defendant alleges incompetence to stand trial, the court shall determine, on evidence presented on the record, whether the defendant is incompetent to stand trial.

> Post Conviction Hearing before a judge Date to be set by the office of Calendar Management

7

(b) If, after receiving evidence, the court finds that the defendant is competent to stand trial, the trial shall begin as soon as practicable or, if already begun, shall continue.

(c) At any time before final judgment, the court may reconsider the question of whether the defendant is incompetent to stand trial.

The statute specifically refers to a "defendant in a criminal case or violation of probation proceeding" and requires that a court determine "whether the defendant is incompetent to stand trial." CP § 3-104(a). The statute permits a court to "consider the question" of a defendant's competence "[a]t any time before final judgment." CP § 3-104(c).[8]

The case before us in this appeal is not a criminal case and does not involve a criminal defendant. Rather, this appeal stems from Sheffield's petition for post conviction relief and accompanying motion to transfer. When Sheffield sought a transfer to Perkins in order to obtain psychiatric treatment with the goal of attaining competency, Sheffield was not a defendant in a criminal case. Sheffield, instead, was a petitioner in a post conviction proceeding. A post conviction proceeding is not a criminal case. *See State v. Bundy*, 52 Md. App. 456, 459 n.2 (1982) ("[A] post conviction proceeding is deemed to be civil in nature[.]"); *Maryland Bar Ass'n, Inc. v. Kerr*, 272 Md. 687, 689-90 (1974) (explaining that a post conviction proceeding "does not constitute part of the original criminal cause, but is an independent and collateral civil inquiry into the validity

---

[8] Indeed, the legislature could set forth a similar mechanism for the trial court's consideration of a petitioner's competency in a post conviction proceeding if it were inclined to do so.

of the conviction and sentence."). This is not a situation in which, "before final judgment," questions arose about the competence of a "defendant in a criminal case or violation of probation proceeding." CP § 3-104(a), (c).

Sheffield points to no statutory authority that would support the trial court's transfer under the circumstances of this case.[9] Rather, Sheffield points to a variety of other sources that he asserts form the basis for the trial court's authority to order his transfer. Both parties discuss the United States Supreme Court case of *Ryan v. Gonzalez*, 568 U.S. 57 (2013), at some length in support of their opposing positions. The issue before the Supreme Court in *Ryan* was "whether the incompetence of a state prisoner require[d] suspension of the prisoner's federal habeas corpus proceedings." *Id.* at 60-61. The Supreme Court held that the petitioners did not have a statutory right to the suspension of federal habeas proceedings under such circumstances. *Id.* at 61.

The *Ryan* petitioners argued that two statutes formed the basis for the right to competency in habeas proceedings, specifically, 18 U.S.C. § 3599 (guaranteeing the right to federally funded counsel in federal habeas proceedings) and 18 U.S.C. § 4241 (governing the determination of mental competency to stand trial or to undergo post-release proceedings). The Court found that neither statute established a right to competence in federal habeas proceedings. With respect to § 3599, the Court observed that there was no constitutional right to counsel in federal habeas proceedings, and,

---

[9] Counsel for Sheffield conceded at oral argument that there was no statutory authority establishing a right to competency in post conviction proceedings.

9

regardless, the right to competence in a criminal trial is grounded in due process, not in the right to counsel. *Ryan*, *supra*, 568 U.S. at 65-66. The Court further rejected the argument that 18 U.S.C. § 4241 formed the basis for a right to competence in federal habeas proceedings, explaining:

> By its own terms, § 4241 applies only to trial proceedings prior to sentencing and "at any time after the commencement of probation or supervised release." Federal habeas proceedings, however, commence after sentencing, and federal habeas petitioners, by definition, are incarcerated, not on probation.

*Ryan*, *supra*, 568 U.S. at 72.

Accordingly, the Supreme Court held "that the Courts of Appeals for the Ninth and Sixth Circuits both erred in holding that district courts must stay federal habeas proceedings when petitioners are adjudged incompetent." *Id.* at 61. The Court further explained that although the petitioners had no statutory right to competence in habeas proceedings, district courts had the authority to grant a stay while a petitioner attempted to gain competence. *Id.* at 74 ("We do not presume that district courts need unsolicited advice from us on how to manage their dockets. Rather, the decision to grant a stay, like the decision to grant an evidentiary hearing, is generally left to the sound discretion of district courts.") (internal quotation omitted).

MDH asserts that *Ryan* supports its position that the trial court lacked authority to order Sheffield's transfer to Perkins, while Sheffield asserts that *Ryan* forms the basis for the trial court's authority to order his transfer. In our view, *Ryan* provides limited persuasive value in support of or against either argument. *Ryan* expressly involved the

10

issue of a federal habeas petitioner's competence in the context of a trial court's grant of a stay of proceedings. Whether a stay would or would not have been warranted in this case is not the issue before us on appeal. The sole issue before this Court in the instant appeal is whether the trial court had the authority to order that Sheffield be transferred to Perkins. *Ryan* fails to provide any basis for us to infer that the trial court had such authority.[10]

Sheffield points to several other sources that he asserts form the basis for the trial court's authority to order Sheffield's transfer, but we remain unpersuaded. Sheffield asserts that the Court of Appeals expressly held in the case of *Washington v. Warden*, 243 Md. 316 (1966), that a circuit court has the authority to order a transfer of a post conviction petitioner to Perkins to regain competence. We do not read *Washington* to support Sheffield's position as strongly as he suggests. The issue on appeal in

---

[10] Sheffield makes much of the Supreme Court's discussion in *Ryan* of circumstances in which a stay might be warranted. The *Ryan* Court explained:

> If a district court concludes that the petitioner's claim could substantially benefit from the petitioner's assistance, the district court should take into account the likelihood that the petitioner will regain competence in the foreseeable future. Where there is no reasonable hope of competence, a stay is inappropriate and merely frustrates the State's attempts to defend its presumptively valid judgment.

568 U.S. at 709. While these factors may be appropriate for a trial court's consideration when assessing whether to grant or deny a motion to stay post conviction proceedings, they do not form the basis for the trial court's authority to order that a petitioner be transferred from Western Correctional Institute to MDH's inpatient psychiatric facility at Perkins.

11

*Washington* was whether the petitioner had sufficiently rebutted the presumption of a knowing and intelligent waiver of an issue that had not been raised at his first post conviction hearing. *Id.* at 322. When discussing whether the presumption of waiver had been rebutted, the Court of Appeals commented that "sufficient grounds existed prior to the hearing in 1963 for Judge Digges to order a continuance while petitioner underwent psychiatric care at Clifton T. Perkins Hospital." *Id.* at 321. The *Washington* Court did not discuss anything regarding the circumstances of the petitioner's transfer at Perkins or the reason why the petitioner was receiving treatment at Perkins.[11] We, therefore, find Sheffield's reliance on *Washington* to be misplaced.

Other sources that Sheffield asserts form the basis for the trial court's authority to order his transfer include *Strickland v. Washington*, 466 U.S. 668, 691 (1984) (observing that "inquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions"), and *Rees v. Peyton*, 384 U.S. 312, 313-14 (1966) (addressing whether an incompetent habeas petitioner may withdraw his certiorari petition). *Strickland* did not in any way address the issue of a post conviction petitioner's competence. Furthermore, regarding the *Rees* case, in *Ryan*, *supra*, the United States Supreme Court discussed its previous opinion in *Rees* and declined to read it as broadly holding that incompetence is grounds for staying habeas proceedings,

---

[11] *Washington* does not discuss when, how, or why the petitioner came to be confined at Perkins.

observing that *Rees* "provides no clear answer even to th[e] question" of whether an incompetent habeas petitioner may withdraw his certiorari petition. 560 U.S. at 70. Nor are we persuaded by Sheffield's citations to out-of-state authority addressing competence in post conviction proceedings.[12]

---

[12] We shall not discuss in detail each of the four out-of-state cases cited by Sheffield, but we observe generally that these out-of-state cases have limited utility in this context. For example, Sheffield cites the case of *Florida Dept. of Corrections v. Watts*, 800 So.2d 225 (Fla. 2001), arguing that this case held that a trial court could commit an inmate for treatment to restore competency for post conviction proceedings even though such commitment was not affirmatively authorized by statute. In reaching its decision that the trial court was permitted to commit an inmate for treatment, the *Watts* case specifically addressed the "unique circumstance of restoring a capital defendant to competency in order to enable a postconviction motion to proceed" and emphasized "the affirmative responsibility placed on trial courts and this Court with respect to the death penalty." *Id.* at 233.

The remaining out-of-state cases cited by Sheffield are similarly unavailing. In *Haraden v. State*, 32 A.3d 448, 449 (Me. 2011), the Supreme Judicial Court of Maine held that competence may be considered in post conviction proceedings, but the petitioner must remain in the custody of the Department of Corrections during the period of incompetence. *People v. Owens*, 564 N.E.2d 1184, 1190 (Ill. 1990), addressed the issue of competence in a post conviction proceeding under state law and determined that "the court, rather than a jury, shall determine whether a petitioner is competent to consult with his appointed counsel, and a petitioner who is found incompetent shall be remanded to the Department of Corrections, rather than to the Department of Mental Health, until fit." *State v. Debra A.E.*, 523 N.W.2d 727, 734 (Wis. 1994), set forth a process for addressing competency in the context of post conviction proceedings, explaining that "ordinarily this process need not include a court order for treatment to restore competency" and observing that "meaningful postconviction relief can be provided even though a defendant is incompetent."

As MDH points out, other states have reached the conclusion that the standards for competence to stand trial do not apply in the post conviction setting. *See Brock v. State*, 242 S.W.3d 430, 433 (Mo. Ct. App. 2007) (explaining that because a post conviction proceeding "focuses on the validity of what occurred at the trial proceeding, the movant's present mental condition is irrelevant") (internal quotation omitted); *Ex Parte Mines*, 26

(Continued)

13

Sheffield further points to the statutory right to counsel in post conviction proceedings as purported authority for the trial court's transfer order, which includes the right to effective assistance of counsel in post conviction proceedings. *See* CP § 7-108(a) ("[A] person is entitled to assistance of counsel and a hearing on a petition filed under [the post conviction] title."); *Stovall v. State*, 144 Md. App. 711, 715 (2002) ("[A] post conviction petitioner . . . is entitled to the effective assistance of post conviction counsel . . ."). Sheffield does not explain, however, how the statutory right to counsel in post conviction proceedings provides the authority for a trial court's transfer of a petitioner from a correctional facility to Perkins. As we discussed *supra*, the United States Supreme Court has observed the right to competence in a criminal trial is grounded in due process, not in the right to counsel. *Ryan*, *supra*, 568 U.S. at 65-66.

Sheffield further relies upon *Sibug v. State*, 445 Md. 265 (2015), and *Thanos v. State*, 332 Md. 511 (1993), but his contentions based upon these cases are unavailing. Sheffield cites *Sibug* for the proposition that a trial court retains jurisdiction throughout a case to make competency determinations, even through appeal and retrial. *Sibug*, however, involved the issue of competency pre-trial, not in the context of a petition for post conviction relief.[13] In *Sibug*, the issue was a defendant's competence *before* final

_____

S.W.3d 910, 914-16 (Tex. Crim. App. 2000) (concluding that there was no right to competence in a habeas corpus proceeding).

[13] *Sibug* involved a defendant who had been found incompetent and then, eight years later, without having been adjudged competent to stand trial by a judge, the

(Continued)

14

judgment, while in this case, the issue is Sheffield's competence *post* final judgment.

Furthermore, as we have discussed *supra*, unlike the situation in *Sibug*, Sheffield is not a

defendant in a criminal case. *Sibug* is, therefore, inapplicable to this appeal.

Sheffield cites *Thanos* as an example of a case in which a circuit court made a

competency determination when not expressly authorized by statute.[14] Specifically, the

---

defendant was convicted pursuant to a not guilty statement of facts. 332 Md. at 267. His conviction was overturned for reasons unrelated to his competency and a new trial was ordered. *Id.* at 278-79. When Sibug was retried, his attorney did not raise the issue of competency until after he was found guilty; prior to sentencing, defense counsel requested a competency evaluation. *Id.* at 283. The sentencing court found him competent. *Id.* at 287. The issue on appeal was whether Sibug was entitled to a hearing on competency prior to his second trial despite not specifically requesting one. The Court of Appeals held that because the trial court had found Sibug incompetent in 1999 and "no court ever found him competent again until after his 2008 trial," Sibug was still under the previous finding of incompetence at the time of his 2008 trial and was entitled to a competency determination pre-trial regardless of his attorney's failure to raise the issue. *Id.* at 315, 318.

[14] *Thanos* involved a defendant who had been convicted of first-degree murder and sentenced to death in two cases in two separate counties. 322 Md. at 515. After the Court of Appeals affirmed his conviction in the St. Mary's County case, Thanos advised the chief attorney of the appellate division of the Office of the Public Defender that he did not wish to pursue "any further litigation" and informed the office that he was terminating representation. *Id.* at 515-16. While his direct appeal in the Garrett County case was pending before the Court of Appeals, "Thanos wrote to the Governor, complaining that the Office of the Public Defender insisted on filing additional motions on his behalf against his will, and stating, 'I'll not appeal and as soon as the Court of Appeals reviews my case as is mandatory, you sign that death warrant.'" *Id.* at 516.

After Thanos's convictions in the Garrett County case were ultimately affirmed by the Court of Appeals, the State filed a motion seeking a hearing and determination regarding waiver of further review proceedings. Specifically, "[t]he State requested that the trial court conduct a hearing to advise Thanos fully of his rights and to determine whether he wished to waive any further rights and remedies, including his right to the

(Continued)

15

trial court determined whether a defendant who had been sentenced to death for first-degree murder was competent to waive a statutory 240-day stay of execution. 332 Md. at 517-518. On appeal, the issues before the Court of Appeals were whether the trial court erred in finding the defendant competent, whether the trial court erred by having the sentencing judge make the competency determination, and whether the 240-day statutory stay could be waived, as well as the Office of the Public Defender's standing to bring the appeal after the defendant had terminated representation. *Id.* at 518. The Court of Appeals dismissed the appeal based upon the appellant's lack of standing but exercised its discretion to address the issue of whether the 240-day stay of execution could be waived, opining that it could not be waived. *Id.* at 528. *Thanos* in no way addressed the trial court's authority to hold a competency hearing under the unusual circumstances presented in that case, and we decline to read into *Thanos* the principle that a circuit court has broad general authority to make competency determinations in various contexts when not authorized by statute.

Finally, even if we assume *arguendo* that a petitioner in a post conviction proceeding has a right to be found competent, it does not necessarily follow that the trial

---

statutory 240-day stay of execution [then set forth in Article 27, § 645A(a)(4) of the Maryland Code (1957, 1992 Repl. Vol.)]." 322 Md. at 516. The State asserted that if the court concluded that Thanos had knowingly and intelligently waived those rights, it should proceed to issue a warrant of execution. *Id.* The trial court held a hearing and determined that a competency evaluation was necessary before the court could rule on the validity of the waiver. *Id.* at 517. After hearing testimony from mental health professionals, the trial court determined that Thanos was competent to waive the statutory 240-day stay. *Id.*

court has the authority to commit a petitioner to MDH for treatment.  The Department of

Public Safety and Correctional Services provides health care to inmates in its custody,

including mental health services.[15]  Furthermore, if necessary, prisons may utilize the

involuntary admissions provisions set forth in Md. Code (1982, 2019 Repl. Vol),

§ 10-614 of the Health-General Article.  *See also* COMAR 12.02.09.03 (setting forth the

---

[15] Pursuant to Md. Code (1999, 2017 Repl. Vol.), § 8-101 *et seq.* of the Correctional Services Article ("CS"), the Legislature charged the Commission on Correctional Standards with "establish[ing] minimum mandatory standards applicable to security and inmate control, inmate safety, inmate food services, inmate housing and sanitation, inmate rights, classification, hearings, victim notification, restitution, and administrative record keeping."  CS § 8-103(a)(1).  The Commission has established standards for inmate mental health treatment that require the individual responsible for the administration and operation of a correctional facility to "have a written policy and procedure . . . [g]overning the identification, housing, treatment, supervision, and referral of a mentally ill inmate, which includes" the following provisions:

> (a) Access to qualified mental health professionals;
>
> (b) Identification of community resources available to assist;
>
> (c) Specification of the process of evaluation and referral;
>
> (d) Designation of the method for referral to community resources according to established guidelines
>
> (e) Development of comprehensive plans for treatment and care;
>
> (f) Maintenance of supervision records of specified activities and occurrences; and
>
> (g) Identification of separate and distinct living quarters[.]

COMAR 12.14.04.02A(15).

procedure for the Division of Corrections to transfer an inmate to a psychiatric hospital operated by MDH).

We are not insensitive to the issue of the mental health of those who are incarcerated. Nevertheless, absent statutory authority, the circuit court may not transfer a post conviction petitioner from a correctional institution to a psychiatric hospital operated by MDH for the purposes of achieving competency. We, therefore, vacate the order of the Circuit Court for Prince George's County granting Sheffield's motion to transfer and remand for further proceedings consistent with this opinion.

**ORDER OF THE CIRCUIT COURT FOR PRINCE GEORGE'S COUNTY GRANTING SHEFFIELD'S MOTION TO TRANSFER VACATED. CASE REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. COSTS TO BE PAID BY APPELLEE.**

The correction notice(s) for this opinion(s) can be found here:

https://mdcourts.gov/sites/default/files/import/appellate/correctionnotices/cosa/1046s19cn.pdf